The CITY AND COUNTY OF DENVER; the Board of Councilmen of the City and County of Denver; the Honorable William H. McNichols, Jr., acting in his capacity as Mayor of the City and County of Denver; Edward F. Burke, Jr., Salvadore "Sam" Carpio, Cathy Donahue, Stephen Grogan, Paul A. Hentzel, Kenneth M. MacIntosh, James J. Nolan, Larry Perry, Cathy Reynolds, William R. Roberts, M.L. Sam Sandos, L. Don Wyman, in their capacities as members of the Board of Councilmen of the City and County of Denver and Elvin Caldwell, in his capacity as a member and President of the Board of Councilmen of the City and County of Denver, Petitioners,

v.

DENVER FIREFIGHTERS LOCAL NO. 858, AFL–CIO, Respondents.

No. 81SC70.

Supreme Court of Colorado, En Banc.

May 9, 1983.

Max P. Zall, City Atty., Robert D. Dowler, Brian H. Goral, Asst. City Attys., Damas & Smith, Stanislas S. Damas, Denver, for petitioners.

Brauer, Simons & Buescher, P.C., Mark N. Simons, Denver, for respondents.

Semple & Jackson, Martin Semple, Robert I. Cohn, Denver, for amicus curiae, Denver Public Schools.

Larry F. Hobbs, Denver, for amicus curiae, Colorado Educ. Ass'n.

LOHR, Justice.

The Denver Firefighters Local No. 858, IAFF, AFL–CIO (Union), filed a complaint against the City and County of Denver (City) and city officials requesting injunctive relief, claiming that the defendants had breached the parties' collective bargaining agreement by refusing to submit a firefighter's grievance to binding arbitration. The Denver District Court granted the Union's summary judgment motion and the Colorado Court of Appeals affirmed. We allowed the City's petition for writ of certiorari[1] and now affirm the judgment of the court of appeals.

An overview of the parties' past employment and bargaining relationship is helpful to an understanding of the issues presented by this case. On June 15, 1971, Denver voters adopted an amendment to Denver's Home Rule Charter (the 1971 amendment) establishing the right of the firefighters to bargain collectively with the City over terms and conditions of employment and providing for binding arbitration of all unresolved issues should contract negotiations break down.[2] Pursuant to this amendment, the Union and the City have negotiated and entered into collective bargaining agreements each year since 1972.

During negotiations for the 1975 contract, the parties could not agree on the inclusion of a provision for binding arbitration as the final step in a grievance procedure to resolve disputes arising under the terms of the agreement. A panel of arbitrators was appointed as provided by the 1971 amendment to resolve the disputed issue. The panel issued a binding arbitration award favoring the position taken by the firefighters during negotiations and ordered the parties to include a grievance arbitration procedure in their 1975 agreement. Such a provision was also included in the parties' 1976 and 1977 agreements without resort to arbitration during negotiations for these contracts.[3]

The grievance procedure provided for in Article XV of the 1977 agreement, at issue in the present case, establishes a three-step process. Within seven days of learning the

---

1. All defendants joined as petitioners. For convenience, unless the context otherwise requires, we include all defendants collectively in referring to the City.

2. Denver Home Rule Charter, 1971 Charter Rev. §§ C5.80–C5.80–10, pp. 110–110.2.

3. The record reflects that the 1972 through 1974 agreements and the 1978 agreement provide for advisory factfinding by an arbitrator, not binding on the parties, for grievances arising under the terms of those agreements.

facts giving rise to his complaint, an aggrieved firefighter must present a written grievance to the district chief, stating the reasons therefor and the specific provisions of the agreement allegedly violated. The grievant, union steward and district chief then meet to discuss the matter, and the district chief issues a decision. If the firefighter is not satisfied with the "step 1" decision, he may appeal under "step 2" to the fire chief, who then discusses the matter with the firefighter and two members of the Union grievance committee and issues his decision. If the grievant is not satisfied with the fire chief's decision, the Union may give written notice to the City of its intent to submit the matter to arbitration under "step 3." The parties select a "Grievance Arbitration Board" consisting of an appointee of the City, an appointee of the Union, and a third appointee jointly selected by the "representatives of each party." Should the City and Union representatives fail to agree upon the third arbitrator, the American Arbitration Association selects the third member in accordance with its rules. After hearing the grievance, the arbitration board renders a decision, and its "findings" are "final and binding on all parties concerned."

The grievance procedure applies only to those complaints alleging a violation of an express provision of the agreement. Matters specifically excluded from arbitration, among others, are those requiring a change in any terms or conditions of employment as established in the agreement and those not specifically covered by any provisions of the agreement.[4]

On June 20, 1977, the president of Local 858, Michael D. McNeill, filed a grievance stating:

> The aggrieved fire fighter has been discriminated against because of his union activity in as much as he has not received over time for more than 24 months.

The provisions of the 1977 agreement alleged to have been violated were Article VI, Section 2,[5] prohibiting the arbitrary exercise of discretionary power by the City, and Article IV, Section 2,[6] prohibiting discrimination by the City against a firefighter for Union activity. McNeill was dissatisfied with the outcome of the first two steps of the grievance procedure,[7] and the Union notified the City of its intent to submit the matter to arbitration. The City responded by letter stating that it refused to submit the matter to arbitration because *Greeley Police Union v. City Council,* 191 Colo. 419, 553 P.2d 790 (1976) "invalidated binding

---

**4.** Article XV, Section 5, provides:

Anything in this Agreement to the contrary notwithstanding the following matters are not subject to the grievance procedures of this Agreement.

1. Any grievance which is not filed in accordance with the provisions of Section 2 of this Article or does not meet the definition of a grievance as set forth in Section 1 of this Article; or

2. Any matter reserved solely to the Rights of Management (Article VI) or to the discretion of the City or the Fire Chief by the terms of this Agreement; or

3. Any matter which would require a change from the wages, rates or pay, hours, grievance procedure, working conditions, and all other terms and conditions of employment as set forth in this Agreement; or

4. Any matter which is not covered by this Agreement; or

5. Any matter covered by the Charter of the City and County of Denver, the Rules and Regulations of the Denver Fire Department not inconsistent with the express terms of

this Agreement, and the Official Order Book of the Denver Fire Department not inconsistent with the express terms of this Agreement, the Rules and Regulations of the Civil Service Commission of the City and County of Denver, City Ordinances, Statutes and Constitutional provisions.

**5.** Article VI, Section 1 lists eighteen "Rights of Management." Section 2 then provides: "All discretionary power vested in the City and the Fire Chief shall not be exercised in an arbitrary or capricious manner."

**6.** Article IV, Section 2 provides:

No fire fighter shall be discharged, disciplined or discriminated against because of activity on behalf of the Union which does not interfere with the discharge of his duties or any assignments, or violate any of the provisions of this Agreement.

**7.** The written decisions for steps 1 and 2 as required by the agreement are not included in the record.

arbitration of labor disputes involving public jurisdictions." The Union did not agree that *Greeley Police Union* prohibited binding arbitration of grievances arising under the terms of an existing collective bargaining agreement, and this suit followed.

The Union set forth three claims for relief, alleging that the City was required to arbitrate the matter under the terms of the 1977 agreement, under sections 13–22–203 and –204, C.R.S.1973 (1982 Supp.) of the Uniform Arbitration Act, and under C.R.C.P. 109 and *Colo. Const.* Art. XVIII, § 3. The Union requested that the court specifically require the City "to perform under the contract and to proceed with arbitration."

The City filed a motion to dismiss the complaint for failure to state a claim, and the Union filed a motion for summary judgment. After considering affidavits and oral argument, the district court granted the Union's motion and denied the City's motion.[8] The court distinguished between grievance arbitration of matters arising under the terms of an existing collective bargaining agreement and interest arbitration of terms and conditions of employment to resolve disputes arising during negotiations in the formation of a contract. The court concluded that *Greeley Police Union* invalidated only interest arbitration between public officials and employees,[9] and that arbitration of McNeill's grievance was not an unconstitutional delegation of the City's legislative authority because resolution of the grievance requires the interpretation and application of an existing agreement. In addition, the court addressed the City's contention that its negotiators did not voluntarily agree to the grievance arbitration

provision in the 1977 agreement and concluded that the contract is binding on the City.

The City appealed from the judgment of the district court to the Colorado Court of Appeals. The court of appeals affirmed the judgment, adopting the district court's distinction between grievance and interest arbitration to answer the constitutional question. *Denver Fire Fighters Local No. 858, IAFF, AFL–CIO v. City and County of Denver,* 629 P.2d 1086 (Colo.App.1980).[10] We granted the City's petition for a writ of certiorari to consider the question of whether the Colorado Constitution prohibits the submission to binding arbitration of grievances arising under the terms of a collective bargaining agreement between public employers and their employees. We conclude that it does not, and affirm the court of appeals' decision.

We first address the question of whether binding arbitration of disputes involving the interpretation and application of a public employment collective bargaining agreement violates the constitutional prohibition against delegation of legislative authority to persons other than elected officials. We then consider the specific contract provision challenged by the City.

## I.

The elected officials of the home rule city of Denver have the authority to legislate upon and regulate matters relating to the terms and conditions of employment for municipal employees. *Colo. Const.* Art. XX, § 6. Denver's elected officials respon-

---

**8.** The trial court granted summary judgment on the Union's breach of contract claim and ruled that this rendered moot the Union's claims that the Uniform Arbitration Act, C.R.C.P. 109, and *Colo. Const.* Art. XVIII, § 3 also mandate arbitration of the grievance.

**9.** After *Greeley Police Union* was decided, the voters of Denver approved another amendment to their city charter, effective May 15, 1979, providing for submission of all unresolved disputes arising during negotiation of an agreement to an advisory fact-finder. Should the City or the Union refuse to accept the recommendation of the fact-finder, the issue is sub-

mitted to a vote of the qualified electors of Denver for final resolution. Denver Home Rule Charter, §§ C5.80–5 to –8.

**10.** The City only indirectly raised the question of the voluntariness of the agreement in its brief before the court of appeals, and that court chose not to address it. We are satisfied from a review of the undisputed facts presented in the parties' affidavits in support of their motions that the district court correctly concluded that the City voluntarily agreed to the binding arbitration provision.

sible for performing this legislative function may not constitutionally delegate their ultimate decision-making authority to persons who are unaccountable to the electorate. *Greeley Police Union v. City Council, supra.* To allow delegation of legislative authority to an arbitrator who is not elected by the voters of Denver would contravene a central purpose of *Colo. Const.* Art. XXI, § 4 to give the electorate the power of recall over those officials exercising legislative power.

A review of our cases applying the nondelegation principle to public employment collective bargaining situations is helpful to place the present dispute in context. In *Fellows v. LaTronica,* 151 Colo. 300, 377 P.2d 547 (1962), a Pueblo firefighter requested arbitration of a grievance arising under the terms of a collective bargaining agreement. The court denied the firefighter's request for arbitration, holding that the nondelegation principle prohibits public officials from entering into a binding collective bargaining agreement with city employees absent specific authority granted by city charter or state statute.

*Fellows v. LaTronica* was effectively overruled in *Littleton Education Ass'n v. Arapahoe County School District,* 191 Colo. 411, 553 P.2d 793 (1976), where we held that collective bargaining between a school board and public school teachers does not violate the Colorado Constitution.[11] We reasoned that the collective bargaining process allows public officials to take cognizance of the employees' positions but that ultimate decisions regarding terms and conditions of employment remain the exclusive province of the elected officials.

In *Greeley Police Union v. City Council, supra,* this court invalidated a city charter amendment, similar to Denver's 1971 amendment, requiring submission to binding arbitration of all unresolved disputes over terms and conditions of employment should the city and the municipal police union reach an impasse during negotiation of a collective bargaining agreement.[12] The holding in *Greeley Police Union* was based on the "prohibition against delegating legislative power to politically unaccountable persons." 191 Colo. at 422, 553 P.2d at 792. The charter amendment considered in that case violated the nondelegation principle because it permitted a person other than an elected official to make binding and ultimate legislative decisions concerning terms and conditions of public employment.

In *Greeley Police Union,* we considered only the charter amendment before us and were not required to draw distinctions between different types of arbitration. When read together, *Fellows v. LaTronica, Littleton Education Ass'n* and *Greeley Police Union* do not preclude us from recognizing distinctions between different types of arbitration or from considering whether the specific contract provision now before us conforms with constitutional principles.

■ We believe that the distinction between interest and grievance arbitration drawn by the district court and the court of appeals in this case is a valid one. An arbitrator is required to perform different functions in the two situations. Binding interest arbitration allows the arbitrator to substitute his judgment for that of public officials on matters the electorate has entrusted to its elected representatives. The

---

**11.** Instead of expressly overruling *Fellows v. LaTronica,* the court in *Littleton Education Ass'n* stated that it was limiting that case to its facts: "a public employer cannot be compelled to arbitrate *disputes* arising from collective bargaining agreements." 191 Colo. at 415, 553 P.2d at 796. Because the firefighter in *Fellows v. LaTronica* based his claim on a grievance arbitration provision in a collective bargaining agreement, a possible interpretation of *Fellows/Littleton* is that the two cases together hold grievance arbitration unconstitutional.

However, only the constitutionality of public sector collective bargaining agreements was addressed in *Fellows v. LaTronica,* not the constitutionality of grievance arbitration, and we decline to interpret *Littleton Education Ass'n* in a way that supplies a holding on an issue never considered by this court.

**12.** The holding of *Greeley Police Union* was reaffirmed in *Aurora v. Aurora Firefighters' Ass'n,* 193 Colo. 437, 566 P.2d 1356 (1977).

combined holdings of *Littleton Education Ass'n* and *Greeley Police Union* recognize that the terms and conditions of public employment contained in a collective bargaining agreement are legislative matters, and the ultimate responsibility for the establishment of such terms must rest with elected officials. Grievance arbitration, on the other hand, arises only after the parties have reached complete agreement on terms and conditions of employment. The arbitrator's function is to make factual findings relating to a particular situation and to interpret and apply specific contract provisions, reading the agreement as a whole and discerning the intent of the parties without rewriting the agreement:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960). When an arbitrator is required to interpret the provisions of an existing agreement, he acts in a judicial capacity rather than in a legislative one. *See People ex rel. Kimball v. Crystal River Corp.,* 131 Colo. 163, 280 P.2d 429 (1955). The authority to interpret an existing contract, therefore, does not constitute legislative authori-

ty, and the nondelegation principle is not implicated in grievance arbitration.

 Cases from other jurisdictions, as well as commentators, have recognized that grievance arbitration does not involve a delegation of legislative authority.[13] Additionally, Colorado cases have laid the groundwork for the distinction between grievance and interest arbitration. Challenges to the validity of acts of the legislature, based on the constitutional prohibition against delegation of legislative authority by the general assembly to unaccountable agencies or persons, are to be resolved by distinguishing "between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law." *Swisher v. Brown,* 157 Colo. 378, 388, 402 P.2d 621, 627 (1965) (quoting from *Field v. Clark,* 143 U.S. 649, 693–94, 12 S.Ct. 495, 505, 36 L.Ed. 294, 310 (1892)). Also, the Colorado Court of Appeals, in a case not involving the constitutionality of arbitration, has recognized that a public employer must follow policies expressly agreed to in a collective bargaining agreement. The court held that a public school teacher is entitled to judicial review of his allegations that the employer breached the agreement. *Rockey v. School District # 11,* 32 Colo.App. 203, 508 P.2d 796 (1973) (cited with approval in *Littleton Education Ass'n, supra*).[14] In general, a public employer may agree to submit to binding arbitration any dispute arising under a contract other than a collective bargaining agreement even though an arbitrator's award may require appropriation of additional public funds to pay it.

---

**13.** *E.g., West Hartford Education Ass'n v. DeCourcy,* 162 Conn. 566, 295 A.2d 526 (1972); *Board of Education v. Philadelphia Federation of Teachers,* 464 Pa. 92, 346 A.2d 35 (1975); *Danville Board of School Directors v. Fifield,* 132 Vt. 271, 315 A.2d 473 (1974); *Local 1226, Rhinelander City Employees v. City of Rhinelander,* 35 Wis.2d 209, 151 N.W.2d 30 (1967); Note, *The Uncertain Status of Public Sector Labor Arbitration in Colorado,* 48 Univ.Colo.L. Rev. 451 (1977); *see Superintending School Comm. of Winslow v. Winslow Education Ass'n,* 363 A.2d 229 (Me.1976); *Dearborn Fire Fighters Union v. City of Dearborn,* 394 Mich.

229, 231 N.W.2d 226 (1975). Some states have upheld interest arbitration as constitutional. *See* Annot., 68 A.L.R.3d 885 (1976) (and cases cited therein).

**14.** In another case not involving the constitutionality of arbitration, we discussed ballot titles and a submission clause recognizing the distinction between grievance and interest arbitration for resolution of disputes between public employers and employees. *In Re Second Initiated Constitutional Amendment,* 200 Colo. 141, 613 P.2d 867 (1980).

*See Columbine Valley Construction Co. v. Board of Directors,* 626 P.2d 686 (Colo. 1981); Annot., 20 A.L.R.3d 569 (1968). Finally, in cases involving matters within the exclusive discretion of public officials, Colorado courts have recognized distinctions between binding arbitration and other types of decision-making and dispute resolution procedures that are not unconstitutional, focusing on whether the specific procedure at issue removes ultimate decision-making authority from elected officials. *Blair v. Lovett,* 196 Colo. 118, 582 P.2d 668 (1978); *Littleton Education Ass'n, supra; Reeve v. Career Service Bd.,* 636 P.2d 1307 (Colo. App.1981); *Willis v. Widefield School District No. 3,* 43 Colo.App. 197, 603 P.2d 962 (1979).

■ A number of policy considerations support our conclusion that grievance arbitration in the public sector is constitutional and desirable. *See* Comment, *Legality and Propriety of Agreements to Arbitrate Major and Minor Disputes in Public Employment,* 54 Cornell L.Rev. 129, 135–36 (1968). First, *Littleton Education Ass'n* held that collective bargaining between public officials and employees is constitutional, and we believe that the effect of this holding could be substantially diminished without a convenient, informal means of resolving interpretational disputes arising under an agreement. Absent an expeditious method of enforcing contract provisions, either party to an agreement may be tempted to breach its terms. Arbitration is an effective method of resolving disputes without the burden of time-consuming court procedures. Second, grievance arbitration in the private sector has been recognized for years as a method of maintaining a peaceful and productive employment relationship, and in the public sector, this benefit will inure to citizens of the municipality who are served by public employees. *See United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Third, the availability

of grievance arbitration may serve to compensate public employees in some measure for the denial of the right to strike.[15] *See, e.g., id.* Furthermore, the legitimacy of representative government is enhanced when a procedure is available to ensure that officials abide by their own policies as established in the collective bargaining agreement.

Finally, we do not believe that the parties to a collective bargaining agreement will be tempted to resolve interest disputes under the guise of grievance arbitration. Arguably, the City and the Union could agree to a collective bargaining agreement with very vague provisions and attempt to resolve an interest dispute through arbitration by alleging that a "grievance" requires interpretation of the vague provision. As a practical matter, we do not believe this situation will arise with significant frequency because it is in the parties' interest to have the essential terms and conditions of employment established rather than to leave such important aspects of their relationship undecided until a future date.

■ While the parties can be expected to attempt to establish essential terms with as much specificity as possible, unanticipated factual situations inevitably will arise. Some of these may involve the need to negotiate in areas not covered by the current agreement, and resolution of such issues is left to the discretion of the public employer until the parties enter into a new agreement covering such areas. Other factual situations, falling within a subject matter covered by specific provisions in the existing contract, may be submitted to arbitration without constitutional infirmity. The arbitrator must initially decide whether application of certain provisions of the agreement will resolve the dispute, and if so, then must proceed to find the facts and apply the contract. If an arbitrator exceeds his authority by going beyond the contract terms and, in effect, enacting new binding terms and conditions of employ-

---

**15.** The Denver city charter and the 1977 agreement both prohibit the firefighters from striking.

ment, the dissatisfied party may apply to the court to vacate the award. Section 13–22–214, C.R.S.1973 (1982 Supp.).[16]

We conclude that binding grievance arbitration of disputes arising under the terms of a public employment collective bargaining agreement is not *per se* unconstitutional as a delegation of legislative authority.

## II.

We now review the specific contract provision at issue in this case and conclude that it comports with constitutional principles and that McNeill's grievance should be submitted to arbitration.

▮▮▮▮▮ Consistent with the distinction we draw today between grievance and interest arbitration, the provision for grievance arbitration in a collective bargaining agreement must be limited to disputes arising under express provisions of the agreement, and must not involve the delegation of discretion to the arbitrator over any matter reserved to the discretion of management under the agreement. Article XV, Section 5 of the parties' 1977 agreement complies with these limitations because it expressly excludes from arbitration:

2. Any matter reserved solely to the Rights of Management (Article VI) or to the discretion of the City or the Fire Chief by the terms of this Agreement; or

3. Any matter which would require a change from the wages, rates of pay, hours, grievance procedure, working conditions, and all other terms and conditions of employment as set forth in this Agreement; or

4. Any matter which is not covered by this Agreement; ...

The grievant, McNeill, cited two provisions of the agreement allegedly violated by the City. Although the grievance procedure excludes from its coverage matters in Article VI involving management rights, section 2 of that article, cited by the grievant, is not one of those rights. That section expressly provides that "[a]ll discretionary power vested in the City and the Fire Chief shall not be exercised in an arbitrary or capricious manner." The other section cited by the grievant, Article IV, Section 2, prohibits discrimination against a firefighter for Union activity. On its face, McNeill's claim is arbitrable because it requires interpretation and application of standards of employer conduct agreed to by the City. The arbitration panel should make factual findings and determine whether the City discriminated against McNeill for his Union activity and exercised its right to assign overtime in an arbitrary and capricious manner within the meaning of the 1977 agreement. If any such violation of the terms of the collective bargaining agreement is found to exist, the arbitration panel may then provide for a remedy consistent with the terms of the agreement that does not encroach on rights reserved to the management.

The judgment of the court of appeals is affirmed and the case remanded with directions to submit McNeill's grievance to arbitration in accordance with the terms of the 1977 agreement and consistent with the views expressed in this opinion.

▮▮▮▮▮▮▮▮▮

---

16. *See Fairchild v. West Rutland School District,* 135 Vt. 282, 284, 376 A.2d 28, 30 (1977): "If the arbitrator's award was based upon a matter not within the terms of the controlling agreement, he has acted beyond the bounds of his authority. The question whether the arbitrator exceeded the scope of his authority is a matter properly before the courts for resolution."