**Jerry HOFF, Plaintiff-Appellee and Cross-Appellant,**

**v.**

**AMALGAMATED TRANSIT UNION, DIVISION 662, Defendant-Appellant and Cross-Appellee.**

**No. 85CA0147.**

Colorado Court of Appeals, Div. III.

July 30, 1987.

Rehearing Denied Sept. 3, 1987.

Certiorari Denied Jan. 11, 1988.

James M. Croshal, Pueblo, for plaintiff-appellee and cross-appellant.

C. Dennis Maes, Pueblo, Hornbein, Mac-Donald, Fattor & Buckley, P.C., Philip Hornbein, Jr., Denver, Benetta Mansfield, Washington, D.C., for defendant-appellant and cross-appellee.

CRISWELL, Judge.

Both plaintiff (the employee) and defendant, Amalgamated Transit Union, Division 662 (ATU), appeal from the judgment of the district court awarding the employee $18,000 in damages for ATU's violation of its duty of fair representation. Because we conclude that there is insufficient evidence in the record to support the damage award, we reverse.

The employee was employed as a driver by the Pueblo Transportation Company (employer), a bus company operated by the City of Pueblo. We assume that the company is an "employer" within the meaning of the Labor Peace Act, § 8–3–101, et seq., C.R.S. (1986 Repl.Vol. 3B), because it is a "mass transportation system" operated by a political subdivision of the state. *See* § 8–3–104(12), C.R.S. (1986 Repl.Vol. 3B).

The employer was subject to a collective bargaining agreement with ATU covering its drivers, including the employee. Only a portion of that agreement was placed into evidence, however. The portion of the agreement that is a part of this record authorizes an ATU committee to investigate "all disputes and questions" arising between the employer and members of ATU. By its terms, the employer agrees to meet with ATU's officers upon "all questions arising between them," and if "any difference" cannot be "mutually adjusted" to have it submitted to a board of arbitration, whose decision is to be "final and binding on both parties."

In 1979, the employee became involved in an altercation with a rider with the ultimate result that his employment was terminated. The trial court, sitting as the trier of fact, found on disputed, but sufficient, evidence that the employee requested ATU to invoke the grievance and arbitration provisions of the contract, but that ATU officials refused to do so, unless the employee reduced his grievance to writing, which he never did. The court also found that, while ATU's refusal to invoke the contract procedures was neither discriminatory nor motivated by bad faith, it was an arbitrary action, since the contract did not require a written grievance to initiate its dispute settlement procedures.

Finally, the court found that the employee had sustained a net loss of earnings of "about $23,200 because he lost his job as a bus driver." However, because the employee was "to some degree responsible for his own difficulties," by refusing to reduce his complaint to writing as requested, the court reduced the employee's damage award to $18,000 and entered judgment in his favor for that amount.

## I.

The concept that a labor organization that has been designated as the exclusive bargaining representative for a group of employees has a duty to represent those employees fairly, and that a represented employee who has been damaged by that organization's violation of its duty has a judicially cognizable claim against it, was recognized by the United States Supreme

Court in its seminal decisions in *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) and *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). The doctrine has been refined and expanded in that court's more recent decisions in *Bowen v. United States Postal Service*, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983) and *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), among others.

In *Vaca v. Sipes, supra,* the Supreme Court concluded that, if a labor organization that represents employees under the National Labor Relations Act (NLRA), 29 U.S.C. § 151, et seq., fails to invoke a contractual dispute settlement procedure on behalf of an employee represented by it, and if such failure results from union conduct which is "arbitrary, discriminatory or in bad faith," the employee will be permitted to institute a direct action against his employer, based upon a claimed breach of contract, without regard to any provisions for arbitration contained within the applicable collective bargaining agreement. Moreover, the employee can also sue his union and collect from it such damages as its wrongful actions have caused him.

The employee's claim against his employer for breach of contract is one which is separate from his claim against the union for violation of the duty of fair representation. *Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). Nevertheless, the two claims are interdependent, because:

> "To prevail against either the company or the Union, [an employee] must show not only that [his] discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

Each of the parties, however, is responsible only for the damages caused by its own actions. *Vaca v. Sipes, supra.* Application of this principle has led to the recent development of a rule of apportionment between the employer and the union of the wage loss sustained by an employee as a result of the termination of his employment. In *Bowen v. United States Postal Service, supra,* an employer was held to be solely responsible for all back pay and benefits that accrued up to the date it might reasonably be estimated an arbitrator would have ordered the employee's reinstatement had the union invoked the contract's arbitration provisions, while the union was held primarily liable for back pay accruing after that date. The employer was held to be secondarily liable for this latter amount of back pay, as well.

It should be emphasized, however, that all of the foregoing jurisprudence was developed by the federal courts under the NLRA or the Railway Labor Act (RLA), 45 U.S.C. § 151, et seq., and that the principles thus developed are not directly applicable to employment settings where the employer is not subject to those federal enactments. Both federal statutes are generally applicable to employers who are either engaged in interstate commerce (NLRA, 29 U.S.C. §§ 151, 152(2) and (6)) or who are federal rail or air carriers (RLA, 45 U.S.C. §§ 151 and 181) and both exclude from their coverage employers that are political subdivisions of any state (NLRA, 29 U.S.C. § 152(2); RLA, 45 U.S.C. § 151).

In this case, if it is assumed that the bus system operated by the City of Pueblo is a "mass transportation system" under § 8–3–104(12), C.R.S. (1986 Repl.Vol. 3B), and that ATU was chosen by the employer's employees as their representative in accordance with § 8–3–107, C.R.S. (1986 Repl.Vol. 3B), then ATU has been granted exclusive representation rights by § 8–3–107(1). To this extent, the state legislation is similar to the two federal enactments. Thus, federal decisions might be looked upon as persuasive as to the meaning of, and policies underlying, the state act.

■ Nevertheless, there are substantial differences between the federal and the state regulatory schemes, *see Communication Workers of America v. Western Electric Co.*, 191 Colo. 128, 551 P.2d 1065 (1976), *appeal dismissed*, 429 U.S. 1067, 97

S.Ct. 799, 50 L.Ed.2d 785 (1977); *Graham Furniture Co. v. Industrial Commission,* 138 Colo. 244, 331 P.2d 507 (1958), and federal decisions are not binding upon the state judiciary in cases where federal legislation is inapplicable. In such instances, the Colorado courts are free to determine for themselves whether the state statute creates an implied right of action in favor of represented employees against labor organizations similar to that recognized under the federal statutes and, if so, the elements necessary to be proven in order to establish such a claim.

## II.

ATU, relying exclusively upon the precepts developed under federal legislation reviewed above, maintains that there are numerous reasons why the district court judgment must be set aside. The employee, on the other hand, asserts that the specific designation of issues in the agreed upon pre-trial order prevents our consideration of any of ATU's claims. We do not wholly agree with either of these arguments.

At the time of the pre-trial order, the parties mutually designated two issues which they considered relevant. The first was whether the employee had ever requested ATU to represent him in any arbitration proceedings, and the second issue was, if it were assumed that ATU had "failed to represent him," what were the "damages" he sustained "as a result of the loss of his job?"

Had the parties restricted their proof and argument before the trial court to these two severely limited issues, and had that court's decision dealt only with those two issues, the employee's claim that ATU had waived its right to raise any further issues might be accepted by us. A review of the record in this case, however, shows that, after stipulating to the two described issues, both parties, as well as the district court, virtually ignored that stipulation. The parties did not limit their proof, or their oral or written argument, to the two issues, but tried the case as if all questions relating to ATU's liability and the employ-

ee's damages were open. Similarly, the trial court's findings and conclusions reviewed the entire gamut of these issues, and included a consideration whether ATU's actions had been arbitrary, discriminatory, or in bad faith under the *Vaca v. Sipes* standard, as well as the extent to which ATU should be held responsible for the employee's claimed wage loss.

Our ultimate conclusion here is that the evidence adduced by the employee was insufficient, as a matter of law, to sustain the damages awarded by the trial court. To this extent at least, our review of the record convinces us that the parties tried that issue by consent, and consequently, we are free to consider it. *See* C.R.C.P. 15(b); *Tovrea v. Denver & Rio Grande Western R.R. Co.,* 693 P.2d 1016 (Colo.App. 1984).

## III.

■ No Colorado statute expressly creates a claim for relief of the nature asserted by the employee here, nor has any prior Colorado decision recognized a similar state common law claim. *Fletcher v. Colorado & Wyoming R.R. Co.,* 141 Colo. 72, 347 P.2d 156 (1959), involved a rail carrier under the RLA, and the claim there asserted was, accordingly, governed by federal law. *See Digby v. Denner,* 156 Colo. 260, 398 P.2d 30 (1965). Nevertheless, if it is assumed, arguendo, that state law recognizes a claim similar to that recognized by federal law, this record would still require a reversal of the district court's judgment.

In its findings and conclusions, the district court sought to apply the doctrine of *Vaca v. Sipes, supra,* and *Bowen v. United States Postal Service, supra.* In doing so, however, it made no finding whether the employer's termination of the employee constituted a violation of the collective bargaining agreement, and it failed to delineate what portion, if any, of the employee's wage loss was attributable to ATU's actions. And a review of the record demonstrates that there is insufficient evidence upon these two points to sustain any judgment against ATU.

### A.

The employee argues that, when a union arbitrarily refuses to submit an employee's claimed wrongful discharge to arbitration, there is no need to prove that his discharge did, in fact, violate the bargaining agreement in order for him to recover damages from that union. Furthermore, he asserts that, in any event, the evidence here was sufficient to establish that his discharge was wrongful. We disagree with both points.

■ The cases appear to be uniform in holding that, unless the employee can demonstrate that his claim of wrongful discharge has merit, so that it is probable that he would have succeeded in any arbitration proceeding, there can be no demonstrable damage sustained by him because of the union's refusal to arbitrate his claim. If the union's invocation of arbitration proceedings would not have provided some relief to the employee, its refusal to take such action did not injure him. *See United Steelworkers v. N.L.R.B.*, 692 F.2d 1052 (7th Cir.1982); *Wheatley v. Teamsters Union Local No. 222*, 15 Utah 2d 80, 387 P.2d 555 (1963). *See also Coon v. Ginsberg*, 32 Colo.App. 206, 509 P.2d 1293 (1973) (in attorney malpractice action, client must show that he had meritorious defense or claim and attorney's failure to prosecute was a cause of damages).

In this case, however, there was a complete absence of proof that the employee was discharged in violation of the bargaining agreement.

■ Colorado law continues to recognize the common law rule that, absent a contract modifying the parties' rights or some other special circumstances, an employee hired for an indefinite term is an "employee at will." Such an employee may be terminated without cause and without notice, and his termination without cause gives rise to no claim for relief on his behalf. *See Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987). Hence, for the employee here to establish that he was terminated improperly, he had to show that some provision of the bargaining agreement limited the employer's common

law right to discharge him without cause. A mere demonstration that the employer's action was "unfair," for example, would not be sufficient. Yet, the employee failed to place into evidence any provision of that agreement, except its arbitration provisions.

It is true that these provisions purport to apply to "any difference" that might arise between the parties and that any arbitration award thereunder is binding. However, absent a review of the other terms of the agreement, it is impossible to conclude that these provisions are, themselves, the source of substantive rights. This is particularly true here, since, if the term "any difference" is given a broad, literal meaning, requiring binding arbitration upon issues other than those involving a dispute over the proper interpretation, construction, or implementation of the contract's substantive terms, a question of the validity of the arbitration requirement might be presented. *See Denver v. Denver Firefighters Local No. 858*, 663 P.2d 1032 (Colo.1983).

Since the employee failed to prove that, if arbitration had been pursued by ATU, an arbitrator would probably have found that his discharge violated the agreement, he failed to establish any rational basis for the award of any damages in his favor.

### B.

■ Even if it could be said that this record contained evidence sufficient to sustain a finding that the employer violated the agreement by discharging the employee, there still was insufficient evidence presented to sustain any damage award against ATU.

The principle that an actor is liable only for damages proximately caused by his own wrongdoing is fundamental. *See Department of Health v. Donahue*, 690 P.2d 243 (Colo.1984); *Bruckman v. Pena*, 29 Colo.App. 357, 487 P.2d 566 (1971). As applied to a case such as this, this principle of responsibility might result in either one of two conclusions.

On the one hand, it could be concluded that, because it was the employer's action in terminating the employee that caused his wage loss, the employer alone is liable for such damages. Under this view, the union would be liable only for any additional pecuniary damages which its actions caused the employee. This was the conclusion apparently reached in *Vaca v. Sipes, supra.* *See Bowen v. United States Postal Service, supra* (White, J., dissenting). Alternatively, some apportionment of the wage loss between the employer and the union might be justified, as the *Bowen* majority concluded, provided there is an evidentiary foundation for engaging in such an apportionment on a rational basis.

However, we need not decide which of these two rules Colorado should adopt (assuming that Colorado law would recognize a fair representation claim against a union). In this case, the trial court expressly found that the employee's pecuniary loss, which was limited to his loss of earnings, resulted from the termination of his employment by the employer, and it did not find that ATU's actions were a proximate cause of any pecuniary damage to him. Moreover, the employee failed to produce any evidence upon which a rational apportionment of his lost wages could be based. Absent such evidence and findings, there is no record support for any damage award against ATU.

### IV.

In view of our disposition of the foregoing issues, the employee's cross-appeal, in which he claims that the district court erred in failing to enter judgment against ATU for his entire wage loss, is meritless.

The judgment is reversed and the cause is remanded to the district court with directions to dismiss the employee's complaint with prejudice.

PIERCE and STERNBERG, JJ., concur.