**Charlotte L. NORTON,**
**Plaintiff–Appellant,**
**Cross–Appellee,**

v.

**SCHOOL DISTRICT NO. 1, CITY AND COUNTY OF DENVER, DENVER PUBLIC SCHOOLS, Defendant–Appellee, Cross–Appellant.**

**No. 89CA0945.**

Colorado Court of Appeals,
Division V.

June 28, 1990.

As Modified on Denial of
Rehearing Aug. 9, 1990.

Certiorari Denied April 8, 1991.

William P. Bethke, Hornbein, MacDonald, Fattor & Hobbs, P.C., Rita Byrnes Kittle, Denver, Martha Houser, Gregory Lawler, Aurora, for plaintiff-appellant, cross-appellee.

Semple & Jackson, P.C., Martin Semple, Franklin A. Nachman, Denver, for defendant-appellee, cross-appellant.

Opinion by Judge CRISWELL.

Plaintiff, Charlotte Norton, appeals the summary judgment that dismissed all of the claims that she had asserted against the defendant, School District No. 1 (school district). We affirm in part, reverse in part, and remand for further proceedings.

According to the information supplied to the trial court as a part of the summary judgment proceedings, Norton had become a tenured teacher in the Jefferson County School District sometime prior to 1982. However, after proceedings under the Teacher Tenure Act, § 22–63–101, et seq., C.R.S. (1989 Repl.Vol. 9), she was dismissed by that district in 1985. She sought judicial review of her dismissal in accordance with the statute, and a division of this court ultimately affirmed the dismissal order on August 20, 1987. *See Norton v. Board of Education*, 748 P.2d 1337 (Colo. App.1987).

In the interim, she sought employment with the school district. In the 1985–1986 school year, she served as a substitute teacher on a fairly regular basis, during which time her performance was appraised as either "good" or "superior." She served as a substitute teacher for the school district again in the fall of 1986, and in January 1987, the board of education appointed her as a teacher, pursuant to a written contract, for the remainder of the 1986–1987 school year. That contract was by its terms in effect until August 31, 1987. In March 1987, Norton was given written notice, pursuant to § 22–63–110, C.R.S. (1986 Repl.Vol. 9), that she would not automatically be re-employed for the 1987–1988 school year.

On August 21, 1987, Norton was tendered a written contract for the 1987–1988 school year, which she signed. Shortly thereafter, she spent several days in an orientation program for which she was paid. This written contract, however, was made expressly conditional upon its "final

approval by the Board of Education" of the school district.

On August 21, 1987, news articles describing this court's opinion in Norton's appeal of her Jefferson County School District dismissal appeared. Thereafter, the school district's administrator who was in charge of processing teacher contracts refused to submit Norton's contract to the district's board of education. As a result, the board of education never approved Norton's 1987–1988 contract.

Based upon these underlying facts, Norton instituted suit against the school district, claiming that its actions violated the terms of an express contract, rendered it liable on the theory of promissory estoppel, constituted negligent misrepresentation, violated the terms of a pertinent collective bargaining agreement, and deprived Norton of her civil rights within the meaning of 42 U.S.C. § 1983 (1982). The trial court, however, dismissed all of the claims stated by her.

### I. *Breach of Contract and Promissory Estoppel Claims.*

Plaintiff first asserts that the trial court erred in dismissing her breach of contract and promissory estoppel claims. We disagree.

Section 22–32–109(1)(f), C.R.S. (1988 Repl.Vol. 9) imposes the "duty" upon school districts to employ all personnel necessary to its education program. And, in *Big Sandy School District No. 100–J v. Carroll,* 164 Colo. 173, 433 P.2d 325 (1967), the supreme court held that, with respect to employment of teachers, this duty is required to be exercised by the board of education itself; it cannot be delegated.

Plaintiff argues, nevertheless, that subsequent developments have undermined the bases upon which *Big Sandy* was grounded and have deprived it of any continued viability. We cannot accept this conclusion.

It is true that, since *Big Sandy* was decided, the former strictness with which the supreme court treated the non-delegation principle, as exemplified in *Fellows v. Latronica,* 151 Colo. 300, 377 P.2d 547 (1962), has been relaxed. *See Denver v. Denver Firefighters Local No. 858,* 663 P.2d 1032 (Colo.1983); *Littleton Education Ass'n v. Arapahoe County School District,* 191 Colo. 411, 553 P.2d 793 (1976).

It is also true that the principle, expressly relied upon in *Big Sandy,* that a person contracting with a local government must be certain that that government complies with all formal requirements, *see Englewood v. Ripple & Howe, Inc.,* 150 Colo. 434, 374 P.2d 360 (1962), has also been modified. Indeed, upon this subject, *Big Sandy* itself has been expressly overruled in part. *Normandy Estates Metropolitan Recreation District v. Normandy Estates, Ltd.,* 191 Colo. 292, 553 P.2d 386 (1976).

Further, the supreme court has refused to apply the *Big Sandy* principle to non-teaching personnel, distinguishing between the functions performed by teachers (and the statutory substantive and procedural requirements for their termination) and the functions performed by a district's non-teaching personnel (and the lack of statutory protection of their employment). Based on these distinctions, it has concluded that the *Big Sandy* principle of non-delegation should not be extended to the employment termination of the latter employees. *Fremont RE–1 School District v. Jacobs,* 737 P.2d 816 (Colo.1987). *See Adams County School District No. 50 v. Dickey,* 791 P.2d 688 (Colo.1990).

Finally, we recognize that boards of education in this state may not be exercising the type of discretionary judgment in hiring teachers that the *Big Sandy* court anticipated they would exercise. *See Watson v. Eagle County School District RE–50,* 797 P.2d 768 (Colo.App.1990) (board "rubberstamps" superintendent's directions); *Saye v. St. Vrain Valley School District,* 650 F.Supp. 716 (D.Colo.1986) (superintendent, not board of education, is ultimate policymaker with respect to hiring and firing of teachers).

Nevertheless, while such considerations may influence the supreme court to further modify the *Big Sandy* conclusion sometime in the future, none of these later decisions

has overruled that opinion's basic conclusion that the responsibility for hiring teaching personnel is a function which is imposed upon the board of education itself and is not one to be delegated to the superintendent or other members of the administrative staff. Indeed, the continued propriety of that conclusion has recently been re-affirmed both by the supreme court and by this court. *See Fremont RE–1 School District v. Jacobs, supra; Lindemuth v. Jefferson County School District R–1*, 765 P.2d 1057 (Colo.App.1988) (non-delegation principle of *Big Sandy* bars action based upon promissory estoppel). *See also Seeley v. Board of County Commissioners*, 791 P.2d 696 (Colo.1990).

Thus, the trial court correctly ruled that, because plaintiff could be hired as a teacher for the school district only by the affirmative action of the board of education, and since it is undisputed that that board took no such action, plaintiff could not, as a matter of law, assert any claim against the school district based upon a breach of contract or promissory estoppel.

Likewise, there is nothing in this record to indicate that any member of the board, as distinguished from some employee thereof, took any action that could be relied upon either as an estoppel of the district to deny plaintiff's employment or as a ratification by the board of some action undertaken by the board's employees. *Cf. School District No. 25 v. Stone*, 14 Colo. App. 211, 59 P. 885 (1900) (informal approval of contract by majority of board members, signed by president and secretary, and payment of teachers thereunder estopped board from denying contract).

## II. *The Negligent Misrepresentation Claim.*

■ We also conclude that the *Big Sandy* principle prohibits the assertion of plaintiff's negligent misrepresentation claim. Plaintiff's argument in support of this claim is that, by presenting a written agreement to plaintiff that called for approval of the same by the board of education, a representation was made to plaintiff that the agreement would, in fact, be presented to the board for its action.

However, it was the decision of an administrative employee, and not any action of the board, that prevented the board from taking action upon plaintiff's tendered contract. And, plaintiff did not name this employee as a defendant in this litigation.

■ Because there is no evidence that the board actually made or authorized the alleged representation relied upon here, the board would be liable for any falsity in that representation only under the doctrine of respondeat superior. We conclude, however, that recognition of such a claim would undermine the *Big Sandy* non-delegation principle in much the same way that recognition of a claim based upon promissory estoppel would do. *See Seeley v. Board of County Commissioners, supra.* In either event, the basis for the claim is the prospective employee's reliance upon the actual or implied representation of an administrative employee. *See Lindemuth v. Jefferson County School District R–1, supra.* Plaintiff's claim of negligent misrepresentation was, therefore, properly dismissed.

## III. *The Breach of Collective Bargaining Agreement Claim.*

■ Plaintiff also argues that the trial court committed error in dismissing her claim based upon the collective bargaining agreement between the school district and the organization representing the district's teachers. With this contention we agree.

The trial court's written order dismissing this claim stated two reasons for its action. First, it said it "found that there was no contract in effect." Second, it said that the plaintiff's bargaining agent had processed a grievance on plaintiff's behalf (designed to lead to advisory arbitration under the bargaining agreement) and that plaintiff had not alleged that her agent's actions had been arbitrary, discriminatory, or undertaken in bad faith.

The court's first finding refers to the result of the board of education's failure to approve plaintiff's tendered contract which,

had it been approved, would have been in effect from September 1, 1987, through August 31, 1988. However, as a result of the contract approved by the board in January 1987, plaintiff was an employee of the district through August 31, 1987. Thus, she was employed as a teacher for the school district on the date that the events giving rise to her grievance occurred.

The school district contends, nevertheless, that she was not a part of the group of teachers to whom the collective bargaining agreement was applicable. We conclude, however, that the present record is insufficient to enable us to reach any conclusion with respect to that contention.

The entire bargaining agreement is not contained within this record. Thus, the section of the agreement defining "teacher" as a "regularly assigned unit employee employed half-time or more ... in the negotiating unit as defined in Article 3, Recognition" is before us, but the referenced Article 3 is not. In addition, various portions of the provisions of the agreement that are in the record refer to teachers "with a non-renewable contract."

The grievance filed by the teachers' organization on Norton's behalf asserted that the administrator's actions violated some 13 different provisions of the bargaining agreement, and not all of the referenced provisions were presented to the trial court. Those that were placed in the record, however, appear to make the school district's violation of a teacher's civil rights also a violation of the bargaining agreement.

Plaintiff testified in her deposition that she considered herself covered by the bargaining agreement. And, in light of the dearth of information contained within this record, we cannot conclude, as a matter of law, that she was not a member of the "negotiating unit." Those provisions of the bargaining agreement that are available for our review convince us that the mere absence of a formal, individual employment contract for the 1987–1988 school year may not necessarily be fatal to plaintiff's claim under the collective bargaining agreement. We conclude, therefore, that the court erred in entering judgment on this claim on that basis.

We also conclude that it was not necessary for plaintiff to allege or to prove that her collective bargaining agent acted arbitrarily, discriminatorily, or in bad faith in order for her to maintain an action for damages under the terms of the bargaining agreement.

The trial court's reliance upon this reason for its dismissal order appears to have been based upon the rule adopted by the United States Supreme Court for suits under the Labor Management Relations Act § 301 (29 U.S.C. § 185 (1982)). That rule prohibits an employee from instituting suit against an employer for breach of a collective bargaining agreement without first exhausting that contract's arbitration procedures. However, if the employee proves that he was frustrated in his attempt to exhaust these procedures by his union's arbitrary, discriminatory, or bad faith actions, he may institute a direct action against his employer for breach of the bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

In addition, if the union frustrates the employee's attempt at exhaustion in such a manner, the employee may also have a direct action against that labor organization. *See Hoff v. Amalgamated Transit Union*, 758 P.2d 674 (Colo.App.1987).

■ However, if, as here, the employee sues only the employer for breach of the bargaining agreement and does not join the union as a party defendant, any possible malfeasance on the union's part is relevant to the employee's claim against the employer only to the extent that those actions prevented the employee from exhausting any contractual remedies. And, if the employee is excused from exhausting those remedies for some *other* reason, it is unnecessary for the employee to prove that her bargaining agent's actions were the cause of her failure to exhaust. *See Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870 (3d Cir.1972) (employee need not exhaust contractual remedies if, because of

employer's asserted position, any attempted exhaustion would be futile).

■ Here, although the school district alleged that Norton had failed to exhaust the contractual remedies provided for under the bargaining agreement, it also asserted that its terms were inapplicable to her—defenses that are inconsistent and which were pleaded alternatively. Further, the evidence here is undisputed that the plaintiff's representative did *not* refuse to process her grievance. The district, however, refused to process her grievance because it claimed that she was not covered by the agreement. And, in the face of such refusal, plaintiff has no standing to attempt judicial enforcement of any arbitration obligation. *See Thomas v. Thompson School District,* 749 P.2d 966 (Colo. App.1987).

Thus, Norton was prevented from exhausting any contractual remedies available to her by the district, and there is no merit in the district's exhaustion of remedies defense. Under such circumstances, even if we assume that a state rule similar to the federal *Vaca v. Sipes* rule is to be applied to collective bargaining agreements with local governments, *see Hoff v. Amalgamated Transit Union, supra,* that rule is inapplicable to these proceedings.

We conclude, therefore, that the trial court erred in dismissing plaintiff's collective bargaining agreement claim on the grounds relied upon by it. In reaching this conclusion, we do not address the question whether that agreement applied to plaintiff's circumstances or whether, if so, any action by defendant violated its terms. Those issues will be matters for further development in the trial court.

IV. *The 42 U.S.C. § 1983 Claim.*

■ Plaintiff finally argues that the court erred in dismissing her claim grounded on 42 U.S.C. § 1983. She asserts that the evidence presented to the trial court would allow a reasonable jury to infer that her proposed contract was not submitted to the board of education because of her activity in seeking judicial review of her prior dismissal by the Jefferson County School District. We agree that the trial court erred in dismissing this claim.

We first note that the trial court concluded that the evidence before it demonstrated, as a matter of law, that the reason the administrator refused to submit plaintiff's proposed contract to the board was because she had been dismissed by her previous employer and not because of her efforts to have that discharge decision reviewed by the courts. In reaching this conclusion, the trial court did not address the question whether the failure to submit the contract was under the "color" of some policy or custom of the school district, as required for any action under § 1983. *See Montoya v. City of Colorado Springs,* 770 P.2d 1358 (Colo.App.1989); *Saye v. St. Vrain Valley School District, supra.* Likewise, the parties have not addressed this issue on this appeal, and we have not considered it in reviewing the trial court's judgment.

However, our review of the record convinces us that there was sufficient evidence to allow a reasonable finder of fact to infer that the administrator's actions in refusing to submit plaintiff's contract to the board of education was based upon that administrator's discovery that plaintiff had petitioned the courts to review her prior dismissal. As a result, the trial court improperly granted summary judgment on this claim. *See Moon v. Platte Valley Bank,* 634 P.2d 1036 (Colo.App.1981).

In her deposition, plaintiff testified that, when she first sought work with the school district, she told the administrator in charge of substitute teachers of her dismissal by the Jefferson County School District. She testified that she also informed the principal of the school at which she worked of her prior dismissal.

It is undisputed that plaintiff was nevertheless employed as a temporary substitute for the 1985–1986 school year. In addition, the same administrator who refused to forward her tendered contract to the school board in August 1987 had, in January of that same year, forwarded a written contract for plaintiff for the remainder of the

1986–1987 school year, and the board of education had approved it.

Further, the administrator's refusal to present plaintiff's proposed contract to the school board came only a few days after this administrator learned, through a newspaper article, of plaintiff's court appeal. And, this administrator denied that the *reason* for plaintiff's prior dismissal by the other school district played any part in her decision. She said, rather, that she had adopted a personal policy of refusing to recommend any person for a vacant teacher position who had been dismissed by another school district for *any* reason. She explained the existence of the school district's contract with plaintiff for the latter part of the 1986–1987 school year on the basis of her alleged ignorance of plaintiff's prior dismissal.

Based upon this evidentiary showing, we are convinced that a finder of fact could reasonably infer that (1) contrary to her testimony, this administrator was aware of plaintiff's prior dismissal and approved her contract for 1986–1987 in spite of that fact; and (2) it was only after learning that plaintiff had undertaken steps to obtain a judicial review of her prior dismissal that this administrator decided not to present plaintiff's contract to the board. And, given such inferences, plaintiff's evidence would support a claim of unlawful retaliation under § 1983.

■ So long as the claim made is not frivolous, the First Amendment protects the right of citizens to institute judicial proceedings to protest against actions of local governments and to seek to have those actions set aside. *Protect Our Mountain Environment, Inc. v. District Court,* 677 P.2d 1361 (Colo.1984); *Anchorage Joint Venture v. Anchorage Condominium Ass'n,* 670 P.2d 1249 (Colo.App. 1983). Thus, retaliation by a local government against a citizen for taking such action may constitute a "deprivation" of civil rights under § 1983. *See Owens v. Rush,* 654 F.2d 1370 (10th Cir.1981) (husband stated claim under § 1983 based on his employment termination in retaliation for his assistance to wife in prosecuting her civil rights claim).

It hardly needs be said that an improper motive can rarely be proven by direct evidence; its existence must be found from the circumstances and reasonable inference. Thus, summary judgment is rarely appropriate if a party's motive or intent is genuinely at issue. *Wolther v. Schaarschmidt,* 738 P.2d 25 (Colo.App.1986).

Contrary to the trial court's decision, therefore, we conclude that the school district did not demonstrate, as a matter of law, that plaintiff's litigation with the Jefferson County School District did not play a substantial role in the administrator's decision not to forward her proposed contract to the board of education. Thus, it was inappropriate to grant summary judgment on this basis.

V. *School District's Request for Attorney Fees.*

■ We reject the school district's request for attorney fees. While we have affirmed the trial court's dismissal of plaintiff's contract, promissory estoppel, and negligent misrepresentation claims because of the applicability of *Big Sandy,* her attempt to escape the effect of that case represented a good faith attempt to have the law changed or modified. Under such circumstances, an award of attorney fees under either § 13–17–102, C.R.S. (1987 Repl.Vol. 6A) or C.A.R. 38 would be inappropriate. *See Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984).

That part of the judgment dismissing plaintiff's claims for breach of an individual employment contract, promissory estoppel, and negligent misrepresentation are affirmed. That part of the judgment dismissing her claim based upon the collective bargaining agreement and her claim asserted under 42 U.S.C. § 1983 is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views expressed herein.

DAVIDSON and DUBOFSKY, JJ., concur.