### No. 26963

**Littleton Education Association v. Arapahoe County School District, No. 6; and Charles B. McClure, Michael T. Vaggalis, Robert T. Stansbury, Frank R. Lee and Carolyn Francisco, individually and as Directors of Arapahoe County District No. 6**

(553 P.2d 793)

Decided August 23, 1976.

Hobbs and Waldbaum, P.C., Larry F. Hobbs; Alperstein, Plaut and Busch, P.C., Frank Plaut, for plaintiff-appellant.

Simon, Eason, Hoyt & Malone, P.C., Richard L. Eason, Stephen G. Everall, for defendants-appellees.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Joseph N. de Raismes, First Assistant, Human Resources Section, John Kezer, Assistant, for Division of Labor, Department of Labor and Employment, State of Colorado, amicus curiae.

Robert H. Chanin, Elise T. Snyder, for National Education Association, amicus curiae.

Dennis E. Valentine, for Colorado Education Association, amicus curiae.

Zwerdling, Mauer, Diggs & Papp, A. L. Zwerdling, for American Federation of State, County, and Municipal Employees, AFL-CIO, amicus curiae.

Hubert M. Safran, for American Federation of State, County and Municipal Employees, Council 76, AFL-CIO, amicus curiae.

Fred W. Clifford, for The Colorado Federation of Teachers, amicus curiae.

Jay W. Swearingen, Reese Miller, for The Colorado Association of School Boards, amicus curiae.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This appeal involves a determination of the validity of a collective bargaining agreement between defendant-appellee school board of Arapahoe County school district No. 6 (the board) and plaintiff-appellant Littleton Education Association (LEA). One of the main issues is the applicability of the Public Meetings Law to the bargaining process in this case. We affirm the judgment declaring the particular agreement illegal. We do not adopt the court's ruling that, absent legislative authority, the board has no power to enter into collective bargaining agreements.

We review the factual background in this case to bring our ultimate determination into focus. The LEA is a local affiliate of the Colorado Education Association. The latter is a state affiliate of the National Education Association, an independent organization of professional educators. The board and LEA have successfully and amicably negotiated two separate agreements with respect to salaries and other terms and conditions of teachers' employment in the district since 1967. The second of these predecessor agreements expired on December 31, 1973.

Prior to that date negotiations for a new contract were unsuccessful. The board, therefore, pursuant to its statutory duty, adopted a salary

schedule incorporating it into the budget prepared for the 1974 fiscal year. By a so-called "no contract, no work" philosophy LEA members voted to strike and on January 3, 1974, the walkout began. The district's schools were closed for a period of two weeks. The teachers returned to work when the board obtained a preliminary injunction against the strikers.

Prior to the strike the LEA proposed a salary schedule which was rejected by the board. Following the strike the board proposed a compromise schedule. This was accepted by a vote of a majority of the teachers taken on March 5, 1974. One week later the board and LEA entered into the subject agreement incorporating the compromise salary schedule.

Shortly thereafter the board sent individual contracts to each teacher to be signed and returned within a month. If not so executed, the board considered the teacher to have abandoned the right to continued employment.

At this point the LEA commenced the present action in an effort to enjoin the board from requiring the execution of the individual contracts. They alleged them to be inconsistent with the terms of the collective agreement as well as the Teacher Employment, Dismissal, and Tenure Act of 1967. Sections 22-63-101 *et seq.*, C.R.S. 1973. The board counterclaimed for a declaratory judgment that the agreement was illegal and therefore void.

The trial court concluded that the agreement was unenforceable on several grounds: (1) that the legislature had not authorized public school district boards to enter into collective bargaining agreements; (2) that negotiations were conducted in violation of the Public Meetings Law: section 29-9-101, C.R.S. 1973; (3) that various aspects of the agreement violated specific statutory provisions pertaining to the powers and duties of the district boards of education; and (4) that the agreement lacked consideration.

I.

Collective bargaining negotiations entered into on a voluntary basis have resulted in agreements in 38 of the state's 181 school districts. In 1975 these contracts affected approximately 21,896 teachers in the state public school system.

In arguing for affirmance of the trial court's determination of the *per se* invalidity of such agreements, the board argues that this court's ruling in *Fellows v. LaTronica*, 151 Colo. 300, 377 P.2d 547 (1962), is controlling. In *Fellows* a municipal fireman claimed the city of Pueblo was required by a collective bargaining agreement to submit his dispute concerning vacation and sick leave to binding arbitration. The court held that the contract between the city and the labor union representing the firemen constituted an unlawful delegation of legislative responsibility by the municipality.

Upon reconsideration of the collective bargaining issue in light of subsequent case law, we now make it clear that *Fellows* should not be

considered as per se invalidation of collective bargaining agreements in the public sector even though there is no express statutory authorization for the practice. *See Rocky v. School District #11*, 32 Colo. App. 203, 508 P.2d 796 (1973). Rather, *Fellows* should be limited to the holding on its facts: a public employer cannot be compelled to arbitrate *disputes* arising from collective bargaining agreements. This view is reflected in some of the dictum in the decision:

". . . A proper exercise of the legislative function might well involve consultation and negotiation with spokesmen for public employees, but the ultimate responsibility rests with the legislative body and, under the record here presented, that responsibility cannot be contracted away. For a complete annotation on the question see 31 A.L.R. (2d) 1142."

Also this view was elaborated upon in the specially concurring opinion of the present Chief Justice:

"That public employees may organize in unions and may designate a representative to present their views as to terms and conditions of employment to the body charged with the duty of setting such terms and conditions if the body chooses to hear them seems now to be generally accepted. Agreements reached between the negotiating parties may be translated into effect by proper legislative action, providing such agreements do not conflict with constitutional, charter or statutory provisions."

█ It is to be noted that *Fellows* did not address the question of the bargained-for agreement itself. And we also point out that the subject agreement did not provide for binding arbitration on the points of disagreement when the negotiations broke down as involved in *Greeley Police Union v. City Council of Greeley,* 191 Colo. 419, 553 P.2d 790. On the contrary, only the services of an impartial fact finder are provided for. The agreement specifically states that the fact finder's report ". . . shall be advisory only . . ." If the parties are still at an impasse after the advisory report of a fact finder, the agreement provides that ". . . the Board has the authority *to make the final decision and determination on all unresolved issues,* without further negotiation." (Emphasis added.)

The defect in the board's position that the subject agreement constitutes an unlawful delegation of authority and places control of a school system in the hands of an employee organization reflects a basic misperception of the negotiations process. Negotiations between an employer and an employee organization entered into voluntarily, as in this case, do not require the employer to agree with the proposals submitted by employees. Rather, the *ultimate* decisions regarding employment terms and conditions remain exclusively with the board. While the employees' influence is permitted and felt, the control of decision-making has not been abrogated or delegated.

Furthermore, school boards in this state are empowered with the general authority to contract. Section 22-32-101, C.R.S. 1973. Section 22-32-

109(1)(f), C.R.S. 1973, indicates that school boards may contract for the purpose of performing their specific duty:

"To employ all personnel required to maintain the operations and carry out the educational program of the district, and to fix and order paid their compensation;"

Also, the district boards may, under section 22-32-110(1)(k), C.R.S. 1973, enter into a contract for the purpose of exercising their specific power:

"To adopt written policies, rules, and regulations, not inconsistent with law, which may relate to the efficiency, in-service training, professional growth, safety, official conduct, and welfare of the employees, or any classification thereof, of the district. . . ."

In *Chicago Division v. Board of Education*, 76 Ill. App.2d 456, 222 N.E.2d 243 (1966), the court held that a school board does not require legislative authority to enter into a collective bargaining agreement and that such an agreement is not against public policy.

In *Louisiana Teachers' Association v. New Orleans Parish School Board*, 303 So.2d 564 (La. App. 1974), *cert. denied*, 305 So.2d 541 (La. S.Ct. 1975), a school board was held empowered to engage in collective bargaining in the absence of express legislative authority to do so. The court stated:

"The Board has the statutory authority to determine the number of teachers to be employed, to select such teachers, to hire them and to fix their salaries, as well as to determine the number and location of schools. [Citation omitted] The Board is further authorized to make rules and regulations for its own government, not inconsistent with law or with the regulations of the Louisiana State Board of Education.

"We hold that a school board, incidental to its statutory duties above enumerated, has the power and authority to collectively bargain with an agent selected by the employees, if the Board determines in its discretion that implementation of collective bargaining will more effectively and efficiently accomplish its objectives and purposes. In our opinion the Board can select reasonable means to carry out its duties and responsibilities incidental to the sound development of employer-employee relations, as long as the means selected are not prohibited by law or against public policy."

See also *Gary Teachers Union Local No. 4 v. School City of Gary*, 152 Ind. App. 591, 284 N.E.2d 108 (1972); and *Dayton Classroom Teachers v. Dayton Board of Education*, 41 Ohio St.2d 127, 323 N.E.2d 714 (1975).

As one commentator has noted:

"If a public employer has the authority to execute individual employment contracts and is interested in efficiency and administrative simplicity, those individual contracts will contain standardized terms. Once one realizes that contracts negotiated for the same kind of work — office

clerical, for example — are subject to standardization, it becomes apparent that a general power to contract can fairly encompass powers to confer exclusive recognition and execute collective bargaining contracts. A collective bargaining contract is essentially a master contract which sets the terms and conditions of employment for individual employees without requiring formal negotiation of these matters with each employee. If a public employer can standardize individual contracts of employment, it should also be able to utilize the more efficient master contract negotiated with an employee representative to achieve the same result. To say that standardized individual contracts are permissible, but a master contract is not, is to exalt form over substance." Dole, *State & Local Public Employee Collective Bargaining in the Absence of Specific Legislative Authority*, 54 Iowa L. Rev. 539 (1969).

■ In determining that a school board's participation in collective bargaining is not *per se* an unlawful delegation of its authority, we are cognizant of the fact that agreements reached pursuant to such procedures, in the absence of specific statutes to the contrary, must not conflict with existing statutes concerning the governance of the state school system.

We do not say, absent a statute so requiring, a school board can be compelled to enter into collective bargaining.

II.

We affirm here because the trial court held that the agreement in this case was reached in violation of the Public Meetings Law. Section 29-9-101, C.R.S. 1973, states:

"(1) All meetings of any board, commission, committee, or authority of a policital subdivision of the state supported by law in its activities in whole or in part with public funds are declared to be public meetings and open to the public at all times; except that such groups, by majority consent of members present, may go into executive session for consideration of documents or testimony given in confidence but shall not make final policy decisions nor shall any resolution, rule, ordinance, regulation, or formal action or any action approving a contract or calling for the payment of money be adopted or approved at any session which is closed to the general public.

"(2) Any action taken contrary to the provisions of subsection (1) of this section shall be null and void and without force or effect."

■ The record reflects that the board's negotiations were handled by a committee of non-board member representatives as well as a board member. Closed sessions were held during which the board's negotiating team met with the LEA team. The board also met in executive sessions with its negotiating team to review the progress of negotiations and to determine policy as well as strategy. We conclude that these latter sessions of the board fall within the proscription of section 29-9-101 and section

22-32-108, C.R.S. 1973.

■ The LEA argues that the statute was not violated in view of the fact that the final vote on the agreement was taken in public. This is contrary to the record which indicates the board decided in private to make its final offer to the LEA which was voted upon by the teachers. Then on March 12th the agreement was adopted by the board in a public meeting. In *Bagby v. School District No. 1*, 186 Colo. 428, 528 P.2d 1299 (1974), we stated:

". . . One has not participated in a public meeting if one witnesses only the final recorded vote.

"The statutes' prohibition against making final policy decisions or taking formal action in other than a public meeting is not meant to permit 'rubber stamping' previously decided issues. The statutes are remedial, designed *precisely,* to prevent the abuse of 'secret or ''star chamber'' sessions of public bodies.'"

We concluded, furthermore, that this law is to be interpreted most favorably for the beneficiary, the public.

LEA and four of amici curiae not including the Attorney General urge that we follow the holding of the Florida Supreme Court in *Bassett v. Braddock*, 262 S.2d 425 (Fla. S.Ct. 1972), holding that such negotiations may be held outside of public meetings. That case is distinguishable. In Florida, public employees have a constitutionally protected right to bargain collectively which was held to be infringed by mandating open sessions. Colorado has neither constitutional nor statutory provisions for collective bargaining in the public sector.

■ Further, in the absence of any express legislative policy expressions, we believe that citizens should have an opportunity to become fully informed and involved with matters on which foreseeable action will be taken and which will have a direct effect on their welfare. See *Bagby, supra*; dissenting opinion in *Bassett, supra*; and C. Summers, *Public Sector Bargaining: Problems of Governmental Decisionmaking*, 44 U.Cin.L.Rev. 669 (1975).

In view of our determination that the agreement in this case was reached in violation of the Public Meetings Law, we do not determine the validity of specific provisions of the agreement which the board claims are in contravention of various sections of the public education statutes within Title 22, C.R.S. 1973. For example, left to another day, if contained in a new agreement, are questions of the validity of provisions pertaining to the grievance and teacher evaluation procedures, the budgetary provisions, the LEA exclusive representation provision or whether the agreement can be binding upon successor school boards.

### III.

■ The trial court ruled that LEA had no standing to question the legality of the individual contracts distributed to teachers in the district

following adoption of the collective agreement. Accordingly, the court concluded that while the individual contracts are enforceable *against* the board because of the latter's admission of liability in their pleadings that "[n]o judgment of any kind is entered against individual school teachers because they are not parties to this action."

We agree with the trial court's determination in this regard; therefore the issue of the legality of the board's requiring signing of these contracts is not properly before us.

Judgment affirmed.

MR. JUSTICE GROVES and MR. JUSTICE LEE do not participate.