2012 COA 98

Steve BROWN, Plaintiff–Appellant,

v.

**JEFFERSON COUNTY SCHOOL DISTRICT NO. R–1, Defendant–Appellee.**

No. 09CA2554.

Colorado Court of Appeals, Div. I.

June 21, 2012.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2011.

Cameron W. Tyler and Associates, P.C., Cameron W. Tyler, Bruce W. Sarbaugh, Boulder, CO, for Plaintiff–Appellant.

Caplan and Earnest, LLC, Michael W. Schreiner, Meghan E. Pound, Boulder, CO, for Defendant–Appellee.

Opinion by Judge FOX.

¶ 1 Plaintiff, Steve Brown, appeals the trial court's order dismissing his breach of contract claim against defendant, Jefferson County School District No. R–1 (the District). We affirm.

## I.  Background

¶ 2 Brown was reprimanded in 2006 by the District, his former employer, because of insubordination toward a supervisor. The District disciplined Brown a second time in 2007 for his vulgar language toward a coworker. In January 2008, three witnesses reported that Brown made threatening comments about his supervisor on different occasions, one as far back as June 2007. In response to the January reports, the District terminated Brown that same month.

¶ 3 As a member of the Classified School Employee's Association (the CSEA), Brown was subject to the collective bargaining agreement (the CBA) between the CSEA and the District, which provides a four-step grievance process.

¶ 4 Step one of this process requires the employee to attempt to resolve the grievance informally by meeting with the employee's administrator. If step one does not result in a satisfactory resolution, the employee, through a CSEA representative, may submit a formal written grievance to the District's Executive Director, and a meeting is held to discuss the problem. The CSEA may demand a step-three hearing on the employee's behalf if it deems the grievance "meritorious." If the grievance is not resolved, the CSEA may demand an arbitration hearing within ten days of receiving the step-three decision. After the arbitrator issues an advisory decision, the arbitrator meets with the

District and the CSEA to discuss the decision. The Board of Education (the Board), an entity separate from the administration of the school district,[1] then takes "official action on the decision of the arbitrator" within thirty days and that completes the administrative process.

¶ 5 After receiving notice of the District's decision to terminate his employment, Brown's CSEA representative filed a grievance in accordance with the four-step grievance process. The parties agreed, as permitted by the CBA, that Brown would waive steps one and two of the grievance process and that the parties would proceed to step three. The hearing officer found that Brown was wrongfully terminated, and stated that the District and the CSEA needed to reach an agreement regarding Brown's reinstatement.

¶ 6 After receiving the hearing officer's decision, Robert Archibold, the District's Executive Director of Employee Relations, informed Brown's CSEA representative that the District rejected the hearing officer's recommendation. The CSEA did not proceed to step four on Brown's behalf and never secured a final decision from the Board. Instead, Brown filed a complaint claiming that the District breached the CBA by refusing to follow the hearing officer's recommendations.

¶ 7 The District filed a motion for summary judgment arguing that the court lacked subject matter jurisdiction because Brown failed to exhaust his administrative remedies. Brown filed a motion for partial summary judgment arguing that, based upon the undisputed facts, the District breached the CBA by failing to honor the hearing officer's binding recommendation. The trial court dismissed Brown's complaint for lack of subject matter jurisdiction, explaining that it was not persuaded by Brown's argument that further administrative review would be futile.

¶ 8 Brown argues on appeal that the district court erred by (1) dismissing his complaint without resolving whether the District

---

1. Consistent with section 22–32.5–103(5), C.R.S. 2011, which defines a "local school board" as the "board of education of a school district," the CBA provides distinct definitions for the two entities. Article 1–2 of the CBA defines the

Board as "the Jefferson County School District, R–1 Board of Education." Article 1–4 defines the District as "the Jefferson County School District, R–1 in the state of Colorado."

breached the CBA, and (2) concluding that further administrative review was not futile. We reject both arguments.

## II. Standard of Review

■ ¶ 9 We review de novo the trial court's grant of summary judgment. *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo.2007). Summary judgment is appropriate when the pleadings and supporting documents show that there is no genuine issue as to any material facts and as a matter of law the moving party is entitled to judgment. C.R.C.P. 56(c); *In re Tonko*, 154 P.3d 397, 402 (Colo.2007). Although the parties presented the issues under Rule 56(c), the court evaluated the District's jurisdictional challenge pursuant to Colorado Rule of Civil Procedure 12(b)(1). Pursuant to C.R.C.P. 12(b)(1), the plaintiff has the burden of proving that the trial court has jurisdiction to hear the case. *Lee v. Banner Health*, 214 P.3d 589, 594 (Colo.App.2009). We review the trial court's factual determinations under a clear error standard and its legal conclusions under a de novo standard. *Monez v. Reinertson*, 140 P.3d 242, 244 (Colo.App. 2006).

## III. Legal Principles

■ ¶ 10 If a party fails to exhaust administrative remedies, the trial court lacks jurisdiction to hear the action. *In re Tonko*, 154 P.3d at 402; *see also Moss v. Members of Colo. Wildlife Comm'n*, 250 P.3d 739, 742 (Colo.App.2010). The exhaustion requirement "prevents piecemeal application for judicial relief and unwarranted interference by the judiciary in the administrative process." *Horrell v. Dep't of Admin.*, 861 P.2d 1194, 1197 (Colo.1993). Exhaustion also allows an agency to correct errors on matters within its expertise and to compile a record adequate for judicial review. *Colorado Dep't of Pub. Health & Env't v. Bethell*, 60 P.3d 779, 784 (Colo.App.2002).

## IV. Grievance Process and Board Action

¶ 11 The Board's final decision is an affirmative requirement of the grievance process.[2] Article 6–5–4–3 of the CBA states:

Within ten (10) workdays after receipt of the arbitrator's [advisory] decision, the District and the CSEA will schedule a meeting to discuss the decision. No public release of information may be made until after such meeting. The Board *shall* take official action on the decision of the arbitrator within thirty (30) days of the discussion meeting.

(Emphasis added). The term "shall" in a contract denotes mandatory compliance. *RCS Lumber Co. v. Sanchez*, 136 Colo. 351, 355, 316 P.2d 1045, 1047 (1957). Because the step-four arbitrator issues an advisory,[3] rather than a binding, decision, the grievance process remains unresolved until the Board makes a final decision.

¶ 12 Thus, according to the CBA and consistent with section 22–32–109(1)(f)(I), C.R.S. 2011—which grants the Board authority to delegate the duty of maintaining employment relations to the District—the Board, acting through its elected members, considers a dispute between the District, acting through the Executive Director of Employee Relations, and an employee only after the four-step grievance process is completed. *See Littleton Educ. Ass'n v. Arapahoe Cnty. Sch. Dist. No. 6*, 191 Colo. 411, 415–18, 553 P.2d 793, 796–98 (1976) (declining to invalidate a collective bargaining agreement between a school district and local education association which did not provide for binding arbitration and which gave the Board the power to make a final decision, without further negotiation, on all unresolved issues). The Board can override the District's refusal to abide by a step-

---

**2.** That decision would take the form of a vote by the elected members who compose the Board. *See* § 22–32–108(6), C.R.S.2011; *Kerns v. Sch. Dist. No. 6*, 515 P.2d 121, 123 (Colo.App.1973) (not published pursuant to C.A.R. 35(f)) (the statutory requirements governing the manner in which school board votes are mandatory, and any action taken without compliance with the statute is a nullity).

**3.** The CBA specifically refers to the step-four arbitration as "Advisory Arbitration." *See, e.g., Littleton Educ. Ass'n v. Arapahoe Cnty. Sch. Dist.*, 191 Colo. 411, 415–18, 553 P.2d 793, 796–98 (1976) (a collective bargaining agreement between an education association and a school district may provide for the services of an impartial fact finder, but the ultimate decision-making authority remains with the board of education).

three recommendation. *See Adams Cnty. Sch. Dist. No. 50 v. Heimer*, 919 P.2d 786, 789–93 (Colo.1996) (court of appeals division set aside the board's decision to dismiss the teacher, finding that the hearing officer's recommendation to reinstate the teacher had more support in the record; supreme court reversed, holding that, because boards of education "have primary responsibility for hiring and firing teachers in their school districts," their actions should be set aside on appeal only if arbitrary, capricious, or legally impermissible); *see also Greeley Police Union v. City Council of Greeley*, 191 Colo. 419, 422, 553 P.2d 790, 792 (1976) (explaining that the collective bargaining agreement between the school district and the employee association in *Littleton Educ. Ass'n* did not require the board of education "to surrender any of its ultimate decision-making authority"; such an agreement would conflict with Colo. Const. art. XXI, § 4 and art. V, § 35, which prohibit delegating legislative power to politically unaccountable persons).

¶ 13 Allowing Brown to seek judicial review on the basis of the District representative's unilateral decision, without the benefit of a vote by the Board, the politically accountable body responsible for employment decisions, as the dissent proposes, conflicts with the constitution and with the operative statute. *See* Colo. Const. art. XXI, § 4 & art. V, § 35; § 22–32–109, C.R.S.2011.

¶ 14 Because the five elected Board members never reviewed the District's decision, they did not issue any order.

## V. Administrative Exhaustion

■■■ ¶ 15 Initially, we must determine whether the doctrine of exhaustion of administrative remedies applies to the CBA.[4] We conclude that it does. Brown is not immune from the exhaustion requirement. As the trial court below correctly recognized, courts are cautious not to intervene until a petitioner has exhausted all available administrative remedies contained in the operative legal framework. *See, e.g., Jefferson Cnty. Sch. Dist. No. R–1 v. Shorey*, 826 P.2d 830, 844–46 (Colo.1992) (directing trial court to stay proceedings on plaintiff's claim pending completion of the grievance process contained in the agreement, where plaintiff claimed that school district breached the collective bargaining agreement when it did not select her for a position as a library media specialist); *see also Crow v. Penrose–St. Francis Healthcare Sys.*, 169 P.3d 158, 164 (Colo. 2007) (physician peer review conducted by a private hospital, and not a state agency is an administrative procedure subject to the Colorado Professional Review Act). The trial court was not free to disregard the statutory requirements constraining the legislatively created body that employed Brown or the agreement at issue. *See* § 22–32–101, C.R.S. 2011; *Bagby v. Sch. Dist. No. 1*, 186 Colo. 428, 432, 528 P.2d 1299, 1301 (1974) (school districts are political subdivisions of the state, created by law and supported in their activities by public funds). In our view, the doctrine of exhaustion of administrative remedies applies with full force to disputes between a public employee and a school district.[5] *See* §§ 22–32–109(1)(f)(I), 22–32–109.4, C.R.S.2011; *Kerns v. Sch. Dist. No. 6*,

---

4. The dissent relies on the doctrine of exhaustion of contractual remedies and explains the doctrine. Brown cited *Jefferson Cnty. Sch. Dist. No. R–1 v. Shorey*, 826 P.2d 830, 844–46 (Colo. 1992)—which the dissent relies on—in his trial court pleadings for the proposition that he had standing to enforce the terms of the CBA. There is, in our view, a serious question about whether Brown's mere citation of that case—while explicitly discussing only the doctrine of exhaustion of administrative remedies—could have alerted the trial court that he was relying on an exhaustion of contractual remedies theory. Certainly, the *Shorey* case never discussed the exhaustion issue in those terms. Even assuming that Brown had sufficiently raised the issue, we agree that the doctrine of administrative exhaustion typically does not, in the absence of a statutory scheme providing otherwise, apply to disputes between private parties involving private interests. *See New Design Construction Co. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1178 (Colo.App.2008) (cited by the dissent, but not by any party). But where, as here, the dispute is between a public employee and a legislatively created entity, § 22–32–101, C.R.S.2011, the doctrine of exhaustion of contractual remedies does not apply. *Id.*

5. Section 22–32–109.4, C.R.S.2011, the Colorado School Collective Bargaining Agreement Sunshine Act, sets forth the requirements for making the collective bargaining agreements entered into by each board of education available to the public.

515 P.2d 121, 123 (Colo.App.1973) (not published pursuant to C.A.R. 35(f)); *see also Cummings v. Bd. of Educ.*, 60 A.D.3d 1138, 874 N.Y.S.2d 614, 615–16 (N.Y.App.Div.2009) (dismissing bus driver's claim of wrongful termination by a school district for failure to exhaust administrative remedies because bus driver did not pursue four-step grievance process contained in collective bargaining agreement); *Civil Service Emps. Ass'n v. Port Washington Union Free Sch. Dist.*, 16 Misc.3d 202, 835 N.Y.S.2d 856, 859–60 (N.Y.Sup.Ct.2007) (dismissing employment association's claims that custodian's assignment violated collective bargaining agreement because, by failing to pursue the agreement's grievance procedure, association failed to exhaust administrative remedies).

¶ 16 The parties do not dispute that Brown only completed three steps of the four-step process. However, the parties dispute whether the "futility exception" exempts Brown from completing the grievance process.

### A. Futility Exception to Exhaustion

¶ 17 Under the futility exception, exhaustion is not necessary when it is "clear beyond a reasonable doubt that further administrative review by the agency would be futile because the agency will not provide the relief requested." *Crow*, 169 P.3d at 165 (quoting *City & Cnty. of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1213 (Colo. 2000)); *accord First Christian Assembly of God v. City & Cnty. of Denver*, 122 P.3d 1089, 1093 (Colo.App.2005). This exception may apply where "the conduct of the employer amounts to a repudiation" of the grievance procedure contained in the bargaining agreement. *Shorey*, 826 P.2d at 844 (quoting *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)).[6] In that situation, "the employer is estopped by [its] own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the em-

ployee's cause of action." *Vaca*, 386 U.S. at 185, 87 S.Ct. 903. The employee, therefore, when confronted with the employer's repudiation of the grievance process, is not limited to the grievance procedure of the collective-bargaining agreement and may sue the employer for breach of contract. *Id.; see Albertson's, Inc. v. Rhoads*, 196 Colo. 159, 161, 582 P.2d 1049, 1050 (1978) (acknowledging that the existence of extraordinary circumstances can dispense with the exhaustion requirement).

¶ 18 Brown claims that proceeding to step four of the grievance process would have been futile because the District's refusal to comply with the step-three hearing officer's recommendation demonstrated that it would not follow an arbitrator's advisory recommendation in step four.[7]

¶ 19 The bargaining agreement makes clear that, regardless of the hearing officer's decision, "if the grievance is not resolved" at step three, a step-four arbitration must be initiated by the CSEA on behalf of the employee. Article 6–5–4–1 states as follows: "If the *grievance is not resolved* at Step Three, a demand for an Arbitration hearing will be transmitted in writing by the CSEA to the office of Employee Relations, within ten (10) workdays after the CSEA receives the Step Three decision." (Emphasis added).

¶ 20 Because the grievance was not resolved at step three, and because the parties did not complete the step-four grievance process, the Board, acting through its elected members, never had an opportunity to review the refusal of the District, that is, Archibold, to reinstate Brown at step three.[8] We recognize that Brown would not normally wish to initiate a step-four proceeding after receiving a favorable recommendation at step three when the District accepts that recommendation. However, where a dispute re-

---

**6.** Another exception to the exhaustion rule has been recognized when the union wrongfully refuses to process an employee's grievance and thereby prevents the employee from exhausting the contractual remedies. *Shorey*, 826 P.2d at 844 n. 6 (citing *Vaca*, 386 U.S. at 185, 87 S.Ct. 903). Brown does not invoke this exception.

**7.** The arbitrator's recommendation must be nonbinding. *Greeley Police Union*, 191 Colo. at 423, 553 P.2d at 792 (holding that "binding arbitration of public sector labor disputes is not constitutionally permissible").

**8.** The dissent treats the District and the Board as a single administrative entity. But, as explained in Section I above, these are separate entities.

mains, Brown must seek redress by the Board under CBA article 6–5–4–3, thus completing the administrative process and securing a final Board decision, before resorting to his judicial remedies.

¶ 21 Brown presented no evidence that the Board, as opposed to the District representative, would not honor the CBA, or could not provide an appropriate remedy. For example, the Board could order the District representative to comply with the hearing officer's recommendations. And, even if the Board supported the District representative, Brown would then be in a position to seek judicial relief because he would have received a Board decision at the conclusion of the administrative process. In any event, the District representative's response to the step-three hearing does not establish "beyond a reasonable doubt" that exhaustion would be futile, particularly where the Board, not the District, makes the final decision in employment disputes, and the Board has never taken a position on this case. *See Littleton Educ. Ass'n*, 191 Colo. at 415–18, 553 P.2d at 796–98 (collective bargaining agreements between school districts and education associations are only constitutionally permissible if the school board retains final decision-making authority in labor disputes); *cf. United Air Lines*, 8 P.3d at 1213 (exhaustion is futile where "the agency refuses to reconsider its decisions or procedures, or has stated a categorical rule to apply in a group [of] cases").

■ ¶ 22 The purpose of the exhaustion requirement is not only to resolve the problem at the administrative level, but to allow the entity "to correct errors on matters within its expertise and to compile a record adequate for judicial review." *Bethell*, 60 P.3d at 784. Here, the arbitrator's decision at step four is merely advisory, and its recommendations are meant to assist the Board in taking "official action." Even where the District does not abide by the hearing officer's decision, the factual record serves to assist the arbitrator, and later the Board, to consider the factual record in deliberating, and in later issuing a decision. Even if Brown had shown beyond a reasonable doubt that the District, an entity separate from the Board, would not comply with an arbitrator's decision in Brown's favor,[9] proceeding to step four, and if necessary, the Board, would not be futile because the arbitrator's advisory decision is necessary for the Board to issue a final decision.

¶ 23 The CBA does not state that the arbitrator's decision is binding on either party. The very use of the term "advisory" in describing the step-four process suggests otherwise. Executive Director Archibold advised Brown's CSEA representative that if the CSEA disagreed with the District's decision not to reinstate Brown in accordance with the hearing officer's advisory recommendation, the CSEA could proceed to the step-four arbitration.[10] Thus, the District representative did not reject the grievance process; rather, the District representative was signaling that a dispute remained, and was willing to proceed in accordance with the CBA.

### B. Repudiation

¶ 24 We recognize that the dissent's treatment of repudiation as an exception to the requirement of exhausting contractual remedies invokes similar principles as the futility exception to the ordinary requirement to exhaust administrative remedies. The dissent

9. The affidavits Brown submitted with his motion to reconsider were filed too late to be considered by the trial court. *See Ogunwo v. Am. Nat'l Ins. Co.*, 936 P.2d 606, 611 (Colo.App.1997) ("Affidavits filed after the granting of a motion for summary judgment cannot be considered in a motion to reconsider, particularly when facts contained therein were, or should have been, known by or available to the party before the court rules on the summary judgment motion."). Even if the affidavits were considered, they reflect the position of the District's counsel, which very well could include a fair amount of posturing that could change as the process advanced to step four and to the Board.

10. Although the affidavits submitted with Brown's motion to reconsider were not properly before the trial court because they were not timely filed, the trial court found that, even considering the affidavits, the evidence did not show that proceeding to step four would be futile. We agree. The affidavits establish that the District did not comply with the hearing officer's decision because it was not binding, and because the CSEA could demand a step-four arbitration. The District timely filed Executive Director Archibold's affidavit with its motion for summary judgment.

cites *Shorey,* 826 P.2d 830, for the proposition that a school district's repudiation of a step-three arbitration excuses an employee from exhausting contractual remedies. We can distinguish *Shorey* on two grounds. First, the school district in *Shorey* denied the employee association's request, on behalf of an aggrieved employee, to arbitrate. *Id.* at 836. By contrast, the District here had no opportunity to refuse to arbitrate because Brown did not request arbitration. Second, despite concluding that the school district repudiated the contract, thereby excusing the employee from exhausting contractual remedies, the supreme court in *Shorey* directed the trial court to stay further proceedings of the employee's breach of contract claim pending completion of a step-three arbitration. *Id.* at 845. Thus, even where a school district's actions amount to a repudiation of a contract, courts refrain from exercising jurisdiction until the grievant exhausts administrative remedies.

## VI. Remaining Contentions

¶ 25 Brown also argues that exhaustion is not required because "the matter in controversy involves a matter of law rather than an issue within the expertise and discretion of the administrative process." *See Moss,* 250 P.3d at 742. Brown misconstrues this exception, which applies where the entity does not have authority to determine the legal issues asserted. *See Horrell,* 861 P.2d at 1197 (explaining that the agency "did not have authority to determine the two constitutional issues asserted"). The Board has authority to charge the District with the duty of maintaining employment relations by entering into a bargaining agreement with the CSEA. *See* § 22–32–109(1)(f)(I). However, under section 22–32–109(1)(f)(I) and article 6–5–4–3 of the CBA, Brown's employment termination grievance is ultimately within the Board's final authority.

¶ 26 Nonetheless, Brown asserts that his breach of contract claim, which arises directly from his employment termination grievance, involves a question of law that should be determined by the judicial system rather than in the grievance process. Before the Board can decide whether the District representative breached the CBA, Brown must complete step-four of the grievance process.

And Brown's claim requires resolution of his grievance by the Board before it can be effectively addressed by the judiciary. *See Shorey,* 826 P.2d at 845 (rule of exhaustion requires an applicant for library media specialist position to exhaust grievance process before proceeding with a breach of contract claim against school district). We conclude that Brown is not exempt from the exhaustion requirement.

¶ 27 Likewise, *Hoffsetz v. Jefferson County School District No. R–1,* 757 P.2d 155, 157 (Colo.App.1988), which the dissent relies upon, is factually distinguishable. There was no allegation in *Hoffsetz* that the parties had not exhausted all the remedies available. In fact, the parties had completed the last step, the nonbinding arbitration, and the school district sought to have the arbitration decision enforced. Here, Brown never invoked the final, nonbinding arbitration step.

¶ 28 Because the trial court did not have subject matter jurisdiction over Brown's claim where the administrative process was not complete, we do not address its merits.

¶ 29 Order affirmed.

Judge DAILEY concurs.

Judge TAUBMAN dissents.

Judge TAUBMAN dissenting.

¶ 30 Because I conclude that plaintiff, Steve Brown, was not required to further exhaust his contractual remedies under the Collective Bargaining Agreement (CBA) before litigating his breach of contract claim against defendant, Jefferson County School District No. R–1 (the District), I respectfully dissent. Specifically, I disagree with the majority for four reasons: (1) because this case presents a question of exhaustion of contractual remedies, rather than exhaustion of administrative remedies, it was properly decided on summary judgment; (2) neither the CBA nor case law requires that the Board must issue a final order for the court to have jurisdiction; (3) Brown should not be required to further exhaust his contractual remedies after prevailing before the hearing officer, because the District repudiated the hearing officer's decision; and (4) it is clear

that further review under the grievance procedures of the CBA would have been futile.

## I. Summary Judgment

¶ 31 Initially, I disagree with the majority and the trial court that this case should be analyzed under the doctrine of exhaustion of administrative remedies, rather than under the doctrine of exhaustion of contractual remedies. I acknowledge that Brown does not expressly rely on the doctrine of exhaustion of contractual remedies. However, he has consistently argued that the determination of the hearing officer in the step three grievance phase is binding on the District, and that he has exhausted his administrative remedies, and therefore, no further pursuit of remedies under the CBA is necessary.

¶ 32 Significantly, both parties cited to the trial court in their cross motions for summary judgment, *Jefferson County School District R–1 v. Shorey*, 826 P.2d 830 (Colo. 1992), a case indisputably addressing the issue of failure to exhaust contractual remedies under a collective bargaining agreement. There, the supreme court noted that where a grievance procedure in a collective bargaining agreement is the "exclusive" remedy available to an employee, the employee must utilize and exhaust the grievance process before filing a claim for breach of contract against the employer. *Id.* at 844. The *Shorey* court held, however, that several exceptions apply to the requirement that claimants exhaust all remedies under the grievance procedure in a collective bargaining agreement, including when the employer's conduct amounts to a repudiation of the grievance procedure contained in the collective bargaining agreement. *Id.* (citing *Vaca v. Sipes*, 386 U.S. 171, 184, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). The term "repudiation" applies to breaches of contract. *See Lake Durango Water Co., Inc. v. Public Utilities Com'n*, 67 P.3d 12, 21 (Colo.2003).

¶ 33 In arguing in the trial court that Brown failed to exhaust his administrative remedies, the District contended that "the exhaustion doctrine serves as a *threshold* to judicial review that requires parties in a civil action to pursue available statutory administrative remedies before filing suit in district court." Significantly, however, the District acknowledged in a footnote that the cases upon which it relied for this proposition address only situations where Colorado statutes outline an administrative review procedure, whereas in the present case, "the parties contractually agreed to be bound by an administrative grievance procedure.... In both instances the policy reasons favoring the exhaustion doctrine remain the same." Thus, even the argument advanced in the trial court by the District should have put the trial court on notice that the issue here concerned failure to exhaust administrative remedies under the grievance procedure of the CBA, a procedure different from exhaustion of administrative remedies pursuant to a statutory scheme.

¶ 34 Additionally, Brown's contention that he was not required to exhaust administrative remedies under the CBA, and both parties' citation to *Shorey*, which concerned exhaustion of contractual remedies, further alerted the trial court to the distinction between exhaustion of administrative and contractual remedies

¶ 35 Under these circumstances, I conclude that Brown sufficiently raised an argument regarding failure to exhaust contractual remedies. *See Blades v. DaFoe*, 704 P.2d 317, 322, 323 (Colo.1985) (court considered plaintiffs' objections to peremptory challenges notwithstanding that they did not cite C.R.C.P. 47(h); *BS & C Enterprises, L.L. C. v. Barnett*, 186 P.3d 128, 130 (Colo.App.2008) (court addressed defendant's argument regarding motion to set aside default judgment even though he did not cite C.R.C.P. 55(b), concluding that his argument "sufficed to focus the trial court's attention on the correct issue").

¶ 36 Accordingly, I address whether the proper analytical framework here is exhaustion of contractual remedies or exhaustion of administrative remedies, and conclude that the proper framework is the former.

¶ 37 As the trial court noted, Brown was a member of the Classified School Employees Association (CSEA) and was a third-party beneficiary of the terms and conditions of the CBA entered into between the District and CSEA.

¶ 38 Relying on *Shorey*, 826 P.2d at 844, the trial court noted that where a grievance procedure in a collective bargaining agreement is the exclusive remedy available to an employee, the employee must utilize and exhaust that grievance process before filing a claim for breach of contract against the employer. The trial court concluded that the CBA here satisfies the exclusivity rule.

¶ 39 Significantly, however, both the trial court and the parties in their briefs conflated the notions of exhaustion of administrative remedies and exhaustion of contractual remedies.

¶ 40 While recognizing the applicability of *Shorey*, the trial court nevertheless applied cases dealing with administrative remedies, and conclude that failure to exhaust administrative remedies "will strip a court of subject matter jurisdiction." *See State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo.1998).

¶ 41 However, the doctrine of exhaustion of administrative remedies differs significantly from the doctrine of exhaustion of contractual remedies, although the two concepts are somewhat similar.[11] The doctrine of exhaustion of administrative remedies is predicated on the establishment of an administrative review process by statute, regulations, or both. *See Horrell v. Dep't of Admin.*, 861 P.2d 1194, 1197 (Colo.1993) (where administrative remedies are provided by statute, the statutory procedure must be followed when the matter complained of is within the jurisdiction of the administrative authority). The doctrine of exhaustion of contractual remedies, in contrast, is based on the specific

provisions of a contract,[12] such as the CBA here. Both doctrines share the general principle that exhaustion of remedies should be followed, subject to specified exceptions.

¶ 42 In *New Design Construction Co. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1178 (Colo.App.2008), a division of this court observed that the doctrine of administrative remedies "applies typically in a controversy between a private party and a governmental agency, which has its own administrative review process, often involving a hearing before a hearing officer or administrative law judge and possibly involving several tiers of administrative review." In contrast, the division noted, in that case, the dispute involved parties to a subcontract containing a form of alternative dispute resolution, a kind of arguably mandatory arbitration, in which they agreed to follow and incorporate a state administrative review procedure. This analysis makes clear that the doctrine of exhaustion of administrative remedies and the doctrine of exhaustion of contractual remedies are different.

¶ 43 Although the dispute here between Brown and the District is between a private party and a governmental entity, it does not implicate the doctrine of exhaustion of administrative remedies. Rather, the doctrine of exhaustion of contractual remedies applies because the administrative framework here arises under the CBA, a contract between the District and the CSEA.

¶ 44 The significant difference between the two doctrines is that, as noted, failure to

**11.** *See Marcelus v. Corrections Corp.*, 540 F.Supp.2d 231, 236 (D.D.C.2008) (in case involving exhaustion of administrative remedies and exhaustion of contractual remedies, court noted that an employee must similarly exhaust any grievance and arbitration procedures provided by collective bargaining agreement); *Cone v. Union Oil Co.*, 129 Cal.App.2d 558, 564, 277 P.2d 464, 468 (1954) (rule requiring exhaustion of grievance in arbitration procedures under collective bargaining agreement is analogous to the rule requiring exhaustion of administrative remedies as a condition precedent to resorting to the courts).

**12.** The general rule regarding exhaustion of contractual procedures was set forth in *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), in which the Supreme

Court determined that an employee must first attempt to utilize his or her grievance procedures before proceeding under section 301 of the Labor Management Relations Act. *Binkley v. Loughran*, 714 F.Supp. 776, 779–80 (M.D.N.C.1989). Courts addressing the rule regarding the exhaustion of contractual remedies have used various terms to describe it. *See, e.g., Sanders v. Youthcraft Coats & Suits, Inc.*, 700 F.2d 1226 (8th Cir.1983) (employee must exhaust her contractual remedies under the collective bargaining agreement); *Coe v. United Rubber Workers*, 571 F.2d 1349 (5th Cir.1978) (employee must exhaust grievance procedures); *City of Miami v. Fraternal Order of Police*, 378 So.2d 20 (Fla.Dist.Ct. App.1979) (discharged probationary police officers must exhaust their extrajudicial or administrative remedies).

exhaust administrative remedies, in the absence of an applicable exception, deprives a court of subject matter jurisdiction. In contrast, an employee's failure to pursue contractual remedies may provide a contractual defense to an employer, but such failure does not deprive a court of subject matter jurisdiction. *See id.* at 1179 (failure to exhaust remedies provided by contract does not result in lack of subject matter jurisdiction); *see also Vaca,* 386 U.S. at 184, 87 S.Ct. 903.

¶ 45 Because a court is not deprived of subject matter jurisdiction when an employee fails to exhaust contractual remedies, a summary judgment motion is the appropriate method to decide a dispute as to exhaustion, and not a C.R.C.P. 12(b)(1) motion, which concerns subject matter jurisdiction. Thus, I disagree with the majority in this regard.

## II. Finality of Decisions by the Board of Education

¶ 46 The majority concludes in the absence of a final order from the Board, the trial court lacked jurisdiction to review Brown's claims. In my view, this conclusion is incorrect because it is inconsistent with the very notion of a multi-step grievance process and further, it is not supported by case law.

¶ 47 Section 6–3 of the CBA's grievance procedure states that the procedure is to provide a "fair, formal, and expeditious manner of resolving differences" regarding matters involved in the agreement. As one treatise has noted, when a settlement is reached under a prearbitration grievance process under a collective bargaining agreement, the parties are bound by it. 3 James A. Rapp, *Education Law* § 7.08[2](a) (2011). Because the CBA provides a four-step grievance procedure, resolving disputes at the initial stages encourages their expeditious resolution. To conclude otherwise would mean that every dispute would have to be pursued through all four steps of the grievance procedure, and then be decided by the Board. Presumably, the multi-step grievance procedure was established so that many disputes would be resolved at one of the four steps of the grievance procedure, *without* the necessity of a final decision by the Board.

¶ 48 As noted, the grievance procedure in the CBA is the exclusive remedy available to an employee, but nothing in the CBA re-

quires that all grievances must be decided by the Board after the four-step grievance procedure has been utilized. To the contrary, section 15–1–1 of the CBA provides that the District shall have the right to discharge employees for just cause; the specific involvement of the Board is not required. Similarly, section 2–9 of the CBA provides, as relevant here, that the Board's authority to discharge employees is not in any manner impaired by or through the execution and performance of the CBA. Nevertheless, this provision does not require that the Board act on every termination or other disciplinary decision.

¶ 49 In a similar case involving the discharge of a school custodian, a division of this court held that an arbitrator's nonbinding decision that was part of a three-tier grievance procedure between the CSEA and the District did not preclude the custodian from filing a lawsuit against the District. The division also rejected the District's contention that the custodian's claim was barred by administrative collateral estoppel, concluding that, notwithstanding the three-tier grievance procedure, "this case involves no administrative proceeding." *Hoffsetz v. Jefferson County School Dist. No. R–1,* 757 P.2d 155, 157 (Colo.App.1988).

¶ 50 In addition, *Littleton Education Ass'n v. Arapahoe County School District No. 6,* 191 Colo. 411, 553 P.2d 793 (1976), relied on by the majority, does not hold that a board of education must always be involved in individual employment decisions. Rather, in holding that collective bargaining agreements in the public sector are not per se invalid, the supreme court held that voluntary negotiations between an employer and an employee organization do not require the employer to agree with the employees' proposals, because ultimate decisions regarding employment "terms and conditions remain exclusively with the board." *Id.* at 415, 553 P.2d at 797. Thus, the supreme court did not hold that a board of education must decide every dispute using a grievance procedure in a collective bargaining agreement.

¶ 51 Further, the cases relied on by the majority are distinguishable. *Adams County School District No. 50 v. Heimer,* 919 P.2d

786, 789 (Colo.1996), involved the propriety of the dismissal of a teacher under the Teacher Employment, Compensation, and Dismissal Act of 1990, sections 22–63–101 to –403, C.R.S.2011. Under that statutory scheme, a board of education must review a hearing officer's findings of fact and recommendations and enter a written order. That is not the case here.

¶ 52 In *Greeley Police Union v. City Council of Greeley*, 191 Colo. 419, 422, 553 P.2d 790, 792 (1976), the principal issue was the validity of a Greeley City Charter amendment providing for collective bargaining and compulsory, binding arbitration of all unresolved municipal-police union labor disputes arising from collective bargaining. The supreme court concluded that binding arbitration of public sector labor disputes was not constitutionally permissible. However, that holding has no application here, because step four of the administrative review process involves nonbinding arbitration and, in any event, the applicability of the arbitration phase of the grievance procedure is not at issue.

¶ 53 Accordingly, I conclude that there is no requirement under the CBA or case law to have the five elected Board members review the District's compliance with the grievance process.

### III. Repudiation as an Exception to Requirement of Exhausting Contractual Remedies

¶ 54 As noted above, an employee must ordinarily exhaust grievance procedures set forth in the CBA when the grievance procedure is the exclusive remedy available to the employee, as is the case here. Nevertheless, courts have noted three exceptions to the requirement of exhausting contractual remedies, one of which, as relevant here, is conduct of an employer that amounts to a repudiation of contractual procedures. Although the trial court here did not note this exception or the other exceptions, the *Shorey* court stated:

One such exception [to the requirement that an employee exhaust his or her contractual remedies] involves the situation where "the conduct of the employer amounts to a repudiation" of the grievance[ ] procedure contained in the collective[ ] bargaining agreement. *Vaca*, 386 U.S. at 185 [87 S.Ct. 903].... In that situation "the employer is estopped by [its] own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action." *Id.* The employee, therefore, when confronted with the employer's repudiation of the grievance process, is not limited to the grievance procedure of the collective[ ] bargaining agreement and may sue the employer for breach of contract. *Id.*

826 P.2d at 844 (footnote omitted).[13]

¶ 55 "Repudiation" is a statement by a contractual party that he or she will not or cannot perform or a voluntary act that renders him or her unable to perform without a breach. Restatement (Second) of Contracts § 250 (1981). In Colorado, repudiation of a contract "must consist of a present, positive, unequivocal refusal to perform the contract, not a mere threat to abandon [the party's] obligations under the contract." *Lake Durango Water Co.*, 67 P.3d at 21.

¶ 56 Here, the hearing officer concluded that the district and CSEA needed "to come to an agreement on the terms of reinstating Mr. Brown without giving him full back pay because of the seriousness of his actions."

¶ 57 In support of its summary judgment motion, the District presented the affidavit of Robert Archibold, executive director of employee relations for the District. Archibold averred that he had attended Brown's step-three administrative hearing, and, "[A]fter reviewing the hearing officer's decision where she recommended that the school district reinstate Steve Brown, I spoke to Bob Brown, the plaintiff's union representative, and told him that the school district was not going to accept the step three hearing offi-

13. While the majority correctly notes that the *Shorey* court affirmed a stay of Shorey's breach of contract claim pending completion of level-three arbitration, which the school district had repudiated, *Shorey* is distinguishable. There,

Shorey and the employee association sought as one form of relief an order requiring the school district to engage in arbitration. *See Shorey*, 826 P.2d at 835. That is not the case here.

cer's step three recommendation." The affidavit added, "I advised Bob Brown that if CSEA disagreed with the school district's decision, the CSEA could file a request for a step four advisory arbitration." In my view, this statement by Archibold constituted a repudiation of the grievance procedure contained in the CBA.

¶ 58 Section 15–1–1 of the CBA provides that the District shall have the right to discharge employees "for just cause as defined in section 1–10." That section, in turn, defines just cause as requiring the exercise of good faith. Specifically, section 1–10 defines just cause as "fair and adequate cause, which is based on reasonable grounds and governed by the exercise of good faith."

¶ 59 "Good faith" connotes "faithfulness to one's duties or obligations." *Black's Law Dictionary* 762 (9th ed.2009). In the context of contract performance, the term "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Restatement (Second) of Contracts § 205 cmt. a (1981).

¶ 60 Archibold's affidavit demonstrated that the District was not acting in good faith and had repudiated the grievance procedure contained in the CBA. Under its duty of good faith, the District had an obligation to negotiate with Brown concerning the terms of his reinstatement. However, the record is devoid of any evidence that the District made any effort to do so. Instead, it expressly refused to accept the step-three hearing officer's recommendation.

¶ 61 This action constituted a repudiation of the grievance procedure contained in the CBA. *See Shorey*, 826 P.2d at 845 (school district repudiated level-three advisory arbitration, thereby excusing employee from exhausting contractual remedies). Had the District engaged in negotiations with Brown in an attempt to reach mutually agreeable terms for his reinstatement, but was unable to do so, it would have satisfied its obligation to negotiate in good faith and would not have repudiated the grievance procedures of the CBA.

★ 62 However, by refusing to negotiate with Brown, the District attempted to turn the doctrine of exhaustion of contractual remedies on its head by requiring a prevailing party to continue to pursue his remedies under the grievance procedure contained in the CBA. The District has cited no case law, and I am aware of none, holding that a prevailing party is required to pursue contractual remedies (or administrative remedies, for that matter) simply because the losing party declines to follow an administrative hearing officer's decision.

¶ 63 Consequently, I would conclude Brown was not required to exhaust his contractual remedies on the basis of repudiation by the District.

## IV. Futility as a Basis for Not Exhausting Contractual Remedies

¶ 64 A second exception to the requirement to exhaust contractual remedies occurs when an employee can show it would be futile to follow a grievance process. *Vaca*, 386 U.S. at 186–87, 87 S.Ct. 903; *see also Glover v. St. Louis–San Francisco Ry. Co.*, 393 U.S. 324, 330, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). In my view, this exception also applies to the circumstances here.

¶ 65 Contrary to the majority's opinion, I believe it would have been futile for Brown to pursue his contractual remedies by seeking an arbitration hearing. Given Archibold's statement that "the school district was not going to accept the step three hearing officer's recommendation," there is no reason to believe that the District would have concluded otherwise following an arbitration hearing.

¶ 66 In other words, the District set up a grievance process review procedure under which only it could prevail. Whether Brown prevailed before the hearing officer or before an arbitrator, the result in all probability would be that the District would decline to follow any recommendation in favor of Brown. Under such circumstances, requiring Brown to participate in the step-four arbitration process would be the very definition of futility. Under the doctrine of exhaustion of contractual remedies, as distinguished from the doctrine of exhaustion of administrative remedies, Brown need not show that it would be futile beyond a reasonable doubt, *see Golden's Concrete Co.*, 962 P.2d at 923, to have exhausted his contractu-

al remedies. However, even if that standard were to apply here, I would conclude that it is clear beyond a reasonable doubt that it would have been futile for Brown to exhaust his contractual remedies.

¶ 67 Accordingly, I would reverse the judgment of the district court and remand for further proceedings on the merits.